118 P.3d 413 (2005)
STATE of Washington, Respondent,
v.
Sean Owen MOBLEY, Appellant.
No. 22965-3-III.
Court of Appeals of Washington, Division 3, Panel Ten.
August 23, 2005.
*414 James E. Egan, Attorney at Law, Kennewick, WA, for Appellant.
Scott W. Johnson, Benton County Prosecutor's Office, Kennewick, WA, for Respondent.
BROWN, J.
¶ 1 Sean Mobley appeals his convictions for child rape and possessing depictions of children engaged in sexually explicit conduct. Mr. Mobley contends: (1) insufficient evidence exists to support his conviction of the second charge; and (2) his confrontation rights were violated by allowing witnesses to testify regarding victim disclosures. We affirm.

FACTS
¶ 2 Ten-year old S.E. accused her step-father, Sean Mobley, of sexually molesting and raping her weekly over the course of two years at their home in Benton County. Mr. Mobley was arrested in December 2002 in Walla Walla, where he had been living since separating from S.E.'s mother in September 2002. When arrested, investigators seized two hard drives from a computer in his bedroom. Although much of the space on the hard drives was empty, the State's forensic expert was able to recover three pictures of young, naked girls from one of the hard drives.
¶ 3 Mr. Mobley was charged in Benton County with two counts of first degree child rape under RCW 9A.44.073, and three counts of possessing depictions of minors engaged in sexually explicit conduct under RCW 9.68A.070. The crimes allegedly took place in Benton County between January 1, 2001 and September 4, 2002.
¶ 4 At trial, the State presented testimony from several witnesses who related S.E. had told them Mr. Mobley sexually molested *415 her.[1] Barbara Mallory, a physician's assistant who interviewed S.E. at the emergency room, testified S.E. said her stepfather had touched her vagina with his finger and mouth. She related S.E. told her this happened approximately every week for two years. Ms. Mallory testified she examined S.E. for signs of rape and noted that S.E. did not have an intact hymen.
¶ 5 Sara Zirkle, M.D. interviewed and examined S.E. at a child sexual abuse clinic. Dr. Zirkle testified S.E. told her she received bad touches "underneath her clothing" by Mr. Mobley with his finger or a Sharpie pen, and that it hurt. Report of Proceedings (RP) at 448-49. Dr. Zirkle also testified S.E. had hymenal irregularities; specifically, S.E. had erosion of the hymen, suggestive of a penetrating injury.
¶ 6 During 68 pages of trial testimony, S.E. testified, partly saying Mr. Mobley had "hurt her" in her "privates" using "his finger," and he done "bad things" to her, but was unable to give more detail or answer more specific questions about the alleged rapes or statements she made to others. RP at 204, 227, and 231-32. S.E. related Mr. Mobley had made her look at "bad pictures" of both naked children and adults on the computer at their house. RP at 211-12. In cross-examination, S.E. answered nearly every question posed, but she was not asked any questions about instances of abuse.
¶ 7 Detective Jason Sprowl testified he was able to pull a partial internet history from one of the hard drives seized from Mr. Mobley, which began in September 2002. He said the internet history indicated a program called, "History Kill" had been downloaded in November 2002, which is designed to eliminate internet history. RP at 593. The available internet history included approximately six hits for "Lolita" internet sites, which he testified are associated with child pornography. RP at 570-72.
¶ 8 Although the majority of the photo images on the second hard drive had previously been deleted, Detective Sprowl was able to retrieve several images of adult pornography, as well as three images of naked, prepubescent children. One of the photos was captioned, "Free Lolita pictures." RP at 570. He testified he was familiar with one of the photos from a previous child pornography investigation. Detective Sprowl related he could not determine how long the images had been on the hard drive or how long these images were viewed before they were deleted. However, he stated that the images were "downloaded or purposefully put on the computer." RP at 582. He also related these images were no longer viewable to the "everyday user," because there was no operating system and the pictures had been deleted. RP at 557.
¶ 9 Based on his training and experience, Detective Sprowl testified the girls in the three pictures appeared to be adolescents. Dr. Zirkle was also asked to identify the age of the three girls depicted. She testified all three girls were probably within the range of nine to twelve years old because of their stages of sexual development.
¶ 10 Mr. Mobley testified he had purchased the hard drives used, and he conceded the two seized hard drives were in his computer when he lived with S.E. and her family in Benton County. Mr. Mobley admitted looking at adult pornography, but he denied intentionally visiting any "Lolita" websites or downloading child pornography. RP at 818. He testified he must have inadvertently followed a link to those sites. Mr. Mobley conceded he used the internet with those hard drives prior to September 2002, but he denied trying to eliminate his internet history. He denied showing S.E. any type of child pornography or sexually molesting her. The jury found Mr. Mobley guilty as charged.

ANALYSIS

A. Evidence Sufficiency
¶ 11 The issue is whether sufficient evidence exists to support Mr. Mobley's conviction for possessing depictions of children engaged in explicit conduct. Mr. Mobley specifically contends the evidence was insufficient *416 to show possession of child pornography at the place and time alleged in the information, and insufficient to establish that the images depicted children engaged in sexually explicit conduct.
¶ 12 The evidence sufficiency test is whether, after viewing the evidence and all reasonable inferences most favorably to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980). We defer to the fact finder to weigh the evidence and judge witness credibility. State v. Bryant, 89 Wash.App. 857, 869, 950 P.2d 1004 (1998) (citing State v. Hayes, 81 Wash.App. 425, 430, 914 P.2d 788 (1996)). Both direct and circumstantial evidence can establish guilt. State v. Brooks, 45 Wash.App. 824, 826, 727 P.2d 988 (1986).
¶ 13 Possession.[2] "A person who knowingly possesses visual or printed matter depicting a child engaged in sexually explicit conduct is guilty of a class C felony." RCW 9.68A.070. Washington's child pornography statute does not define "possession." Generally, possession may be actual or constructive. State v. Callahan, 77 Wash.2d 27, 29, 459 P.2d 400 (1969). Actual control indicates physical custody, while constructive control indicates dominion and control over an item. Id. In establishing dominion and control, the reviewing court examines the "totality of the situation." State v. Morgan, 78 Wash.App. 208, 212, 896 P.2d 731 (1995) (quoting State v. Partin, 88 Wash.2d 899, 906, 567 P.2d 1136 (1977)). Constructive possession need not be exclusive. Morgan, 78 Wash.App. at 212, 896 P.2d 731 (citing State v. Harris, 14 Wash.App. 414, 417, 542 P.2d 122 (1975)).
¶ 14 Mr. Mobley admits dominion and control over the hard drives found in his bedroom, but he contends he did not have actual or constructive possession of the three images of naked children found there. Essentially, he contends because he could not access the images, he did not have control over them. He argues "passing control" is insufficient to establish constructive possession. See Callahan, 77 Wash.2d at 29, 459 P.2d 400.
¶ 15 The level of proof necessary to show knowing possession of child pornography where images have been viewed on the internet, stored on a hard drive, and then deleted has been analyzed in United States v. Tucker, 305 F.3d 1193, 1204 (10th Cir.2002), cert. denied, 537 U.S. 1223, 123 S.Ct. 1335, 154 L.Ed.2d 1082 (2003). The defendant in Tucker argued he did not possess child pornography, but merely viewed these images on his Web browser. Id. The court concluded the defendant had sufficient control over the images in his Web browser's cache files, noting among other things, that he had reached out for the images by visiting child pornography websites. Id.
¶ 16 In United States v. Perez, 247 F.Supp.2d 459, 484 n. 12 (S.D.N.Y.2003), the court addressed the quantity of evidence needed to prove knowing possession of child pornography under similar circumstances. The court noted, "one cannot be guilty of possession for simply having viewed an image on a web site, thereby causing the image to be automatically stored in the browser's cache, without having purposely saved or downloaded the image." Id.
¶ 17 When synthesized with Washington's constructive possession law, the core question seems to be whether the totality of the circumstances establishes that a defendant reached out for and exercised dominion and control over the images at issue. See id.; see also Tucker, 305 F.3d at 1204; Callahan, 77 Wash.2d at 29, 459 P.2d 400. This approach recognizes and promotes the purposes behind Washington's child pornography statute, to protect children by discouraging their sexual exploitation for commercial gain and personal satisfaction. See RCW 9.68A.001. Therefore, evidence of "reaching out for" and "controlling" child pornographic images is incriminating, while inadvertent viewing questions are left to the fact finder.
*417 ¶ 18 Here, Detective Sprowl retrieved three images of naked adolescents from unallocated space on Mr. Mobley's hard drive, indicating the images had been twice deleted. Detective Sprowl found six instances on Mr. Mobley's internet history for "Lolita" sites, indicative of child pornography web site use. RP at 570-72. One photo was labeled: "Free Lolita pictures," and Detective Sprowl recognized one picture as internet child pornography from a previous child molestation investigation. RP at 570. Detective Sprowl testified the images had been "downloaded or purposefully put on the computer." RP at 582. And, S.E. testified Mr. Mobley made her look at "bad pictures" of naked children on the computer when he was living with her family. RP at 211-12.
¶ 19 Although Mr. Mobley testified he inadvertently viewed the child pornography and suggested the images may have been on the hard drives when he bought them, other evidence was sufficient for the jury to find he sought out these images, controlled them by downloading and/or saving them on his computer. Further, the jury could find he showed them to S.E. before deleting them from the hard drive. From circumstantial evidence, the jury could infer Mr. Mobley possessed the images of naked children in Benton County during the time he lived there with S.E., when it was alleged he showed her the images.
¶ 20 Sexually Explicit Conduct of a Child. A conviction under RCW 9.68A.070 requires the State to prove a defendant possessed images of children depicting "sexually explicit conduct." Sexually explicit conduct is partly defined as the "actual or simulated . . . [e]xhibition of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer." RCW 9.68A.011(3)(e). However,
[b]y itself, an exhibition is inanimate and without any purpose of its own. Necessarily, then, its purpose is the purpose of the person or persons who initiate, contribute to, or otherwise influence its occurrence. The initiator or contributor need not be the accused or the minor whose conduct is at issue. Whoever the initiator or contributor is, however, his or her purpose must be to sexually stimulate a viewer. If his or her purpose is different, the conduct will not be sexually explicit by virtue of RCW 9.68A.011(3)(e).
State v. Grannis, 84 Wash.App. 546, 549, 930 P.2d 327 (1997) (noting it would not necessarily be criminal to possess a child playing on the playground or a child taking a bath) (citations omitted); see also State v. Chester, 82 Wash.App. 422, 428, 918 P.2d 514 (1996) (declining to find sexually explicit conduct where minor was unaware she was being photographed as she exited the shower because her behavior was not influenced by the initiator).
¶ 21 Mr. Mobley argues insufficient evidence shows the three images depicted children. However, Detective Sprowl and Dr. Zirkle both testified based on their training and experience that each image depicted children or adolescents. S.E. related some of the pictures she was shown by Mr. Mobley were "bad pictures" of naked children. RP at 211-12. Thus, the evidence was sufficient for the jury to infer the three images depicted children as required by RCW 9.68A.070.
¶ 22 Mr. Mobley argues the three images are merely described in the record as naked children or adolescents, which is insufficient to establish the images contained sexually explicit conduct. However, the images were exhibits at trial. Thus, the jury could view the exhibits to determine if their purpose was to sexually stimulate the viewer. For example, the jury could see how the children were posed and if the children knew they were being photographed. The jury was fully instructed on the sexually explicit conduct definition. Mr. Mobley failed to provide the three exhibits for our record, leaving us to speculate. It is Mr. Mobley's responsibility to provide us with the necessary record relevant to his argument. See RAP 9.6; see also Rhinevault v. Rhinevault, 91 Wash.App. 688, 692, 959 P.2d 687 (1998). We decline to speculate. See Rhinevault, 91 Wash.App. at 692, 959 P.2d 687.
¶ 23 In sum, we conclude sufficient evidence exists to support Mr. Mobley's convictions *418 for possessing depictions of minors' engaged in explicit conduct.

B. Confrontation
¶ 24 The issue is whether Mr. Mobley's confrontation rights were violated by others testifying to what S.E. told them.
¶ 25 "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const.Amend. VI. However, "the admission of hearsay statements will not violate the Confrontation Clause if the hearsay declarant is a witness at trial, is asked about the event and the hearsay statement, and the defendant is provided an opportunity for full cross-examination." State v. Clark, 139 Wash.2d 152, 159, 985 P.2d 377 (1999); see also California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). In order for these protections to be effective, the State must not "shield" the declarant from testifying about difficult questions. Clark, 139 Wash.2d at 161, 985 P.2d 377; see also In re Pers. Restraint of Grasso, 151 Wash.2d 1, 16-17, 84 P.3d 859 (2004) (finding some of child's testimony could not be relied on, where State told her she could answer, "`I don't want to talk about it.'"). If these standards are satisfied, "the `traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness'[s] demeanor'" are preserved. Grasso, 151 Wash.2d at 15, 84 P.3d 859 (quoting Clark, 139 Wash.2d at 158, 985 P.2d 377).
¶ 26 Here, S.E. testified extensively under oath regarding the critical events, her demeanor could be observed, and she was subject to lengthy cross-examination. Her examination covered 68 pages of record. Even so, she did not fully develop her testimony or fully acknowledge her prior disclosures from apparent fear or lack of memory. The State attempted greater specificity, but S.E. was reluctant.
¶ 27 In United States v. Owens, 484 U.S. 554, 559-60, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), an assault victim identified her attacker in an initial interview, but could not identify him at trial due to a head injury. Id. at 556. The Court decided the admission of victim's interview statement did not violate the Confrontation Clause because the defense had a full and fair opportunity to emphasize this memory loss on cross-examination. Id. at 559-60, 108 S.Ct. 838. Similarly, in Grasso, the Court allowed a child sexual assault victim's hearsay statements in conjunction with her testimony, even though she could not remember alleged incidents of sexual abuse or her previous statements. Grasso, 151 Wash.2d at 17, 84 P.3d 859. The Court reasoned the testimony fell "squarely" within the parameters of the Confrontation Clause because she was asked about the events and prior hearsay statements and was subject to full cross-examination. Id.
¶ 28 Here, the State repeatedly questioned S.E. about the alleged abuse and the statements she made to others on the stand. S.E. answered that Mr. Mobley had hurt her in her privates using his finger, and he done "bad things" to her in their home. RP at 204, 227, 231-32. She answered many of the State's questions with a "yes" or "no" or "I don't remember," but failed to elaborate further on the abuse allegations or statements she had made to others. These are constitutionally valid answers. See Grasso, 151 Wash.2d at 17, 84 P.3d 859. The State did not provide S.E. with a means to avoid the difficult questions regarding the alleged sexual abuse.
¶ 29 Further, the defense extensively cross-examined S.E., but chose to emphasize her apparent lack of recall or unwillingness to elaborate without eliciting any testimony from S.E. about the alleged crimes. S.E. answered nearly every question asked on cross-examination. In any case, "the Confrontation Clause guarantees only `an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" Owens, 484 U.S. at 559-60, 108 S.Ct. 838 (quoting Kentucky v. Stincer, 482 U.S. 730, 739, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987)).
¶ 30 Although S.E. was not an expansive witness and appeared intimidated and shy, Mr. Mobley nonetheless enjoyed the traditional protections of the Confrontation Clause: S.E. was under oath, was asked *419 about the critical events by the State, was able to project her demeanor to the jury, and was subject to cross-examination. Therefore, we conclude S.E.'s testimony did not violate confrontation clause principles.
¶ 31 Affirmed.
WE CONCUR: KATO, C.J., and KURTZ, J.
NOTES
[1] Because Mr. Mobley does not allege insufficient evidence for the child rape convictions, we confine the facts to those related to his confrontation claims.
[2] Mr. Mobley also argues the court erred in failing to give his constructive possession jury instruction, but did not assign error to this failure. He does not cite to authority related to the sufficiency of jury instructions. Accordingly, we do not analyze this argument. See RAP 10.3(a)(3); RAP 10.3(a)(5).