994 So.2d 293 (2007)
Richard Joel WARD
v.
STATE of Alabama.
CR-05-1277.
Court of Criminal Appeals of Alabama.
April 27, 2007.
Rehearing Denied June 29, 2007.
Certiorari Denied May 23, 2008 Alabama Supreme Court 1061468.
Tommy Ray Scarborough, Dothan, for appellant.
Troy King, atty. gen., and Madeline Hinson Lewis, asst. atty. gen., for appellee.
*294 PER CURIAM.
The appellant, Richard Joel Ward, pleaded guilty to possession of obscene matter, a violation of § 13A-12-192(b), Ala.Code 1975. He was sentenced to seven years in prison; that sentence was split, and he was ordered to serve one year on work release followed by three years on probation. Before entering his guilty plea, Ward specifically reserved his right to appeal the circuit court's ruling denying his motion to dismiss the charges because, he argued, there was no evidence that he was in possession of obscene matter.
During the guilty-plea proceeding, the prosecutor stated the following facts surrounding the charges:
"We'd expect the evidence would be that the security office at Troy State University at Dothan believed that someone had been accessing one of their computers to visit child-pornography sites. The Troy State University at Dothan security administrator, John McQueen, cooperated with the Dothan Police Department. The Dothan Police Department determined that the individual who had been using this particular computer where the child-pornography sites had been accessed was this defendant, Mr. Ward.
"The State's evidence would be that that was determined by viewing videotapes, which were maintained by the Troy State University at Dothan Security Department. These videotapes, again, were provided to the Dothan Police Department. Still shots were made from the videotapes. And this defendant was identified by comparison of a 2002 arrest photo and also his Alabama driver's license photograph.
"The State's evidence would be that the computer was seized from the Troy State University of Dothan computer lab. The computer was sent to the Alabama Bureau of Investigations Criminal Investigations Center in Montgomery. At that time they, meaning, the Dothan Police Department, requested that a forensic analysis be conducted of the contents of the computer.
"Tonia, T-o-n-i-a, Wimberly with the Alabama Bureau of Investigation conducted that forensic examination of the computer, and reported to the Police Department as to her findings. And we would expect that if we had a trial that she would also testify in court as to the findings. She reported to the Police Department that she had located 288 images of possible child pornography in the temporary Internet files of the hard drive of the computer in question. She also said that there were two different user locations regarding this computer.
"The police contacted the network administrator, Keith Tanco, T-a-n-c-o, and inquired about the user numbers found with respect to this computer. The police were given user numbers for the computers, which also [cor]respond with the user numbers this defendant had access to when he used the computers.
"On September 19, 2003, the defendant came in to speak with Corporal Cherry of the Dothan Police Department and also Investigator Sheila Gray regarding the use or misuse of the computer at Troy State at Dothan. Mr. Ward was read his Miranda rights, and he agreed to speak with the Police Department without an attorney present.
"At that time he stated he had viewed child pornography on the Troy State Dothan computer. He also stated that he had used the Troy State Dothan computer for school papers and projects. The evidence would be that the images were, in fact, examined. And the State would prove at trial that the images which had been examined and which *295 were stored on the computer were, in fact, images of children, and were, in fact, pornographic images of children."
(R. 11-14.)
Before Ward entered his guilty plea the following discussion took place:
"[Defense counsel]: ... [T]he basis of my motion to dismiss was that there is no caselaw in Alabama that directly deals with the issue of viewing pornography. All the cases that I could find dealt with people who actually possess pornography. And in that it appeared to be a case of first impression. I'd ask, your Honor, to reconsider that decision and consider the case of Osborne v. Ohio[, 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990),] that I had submitted to the Court in the brief. And that case stands for the proposition that Ohio had a law that prohibited viewing and possession of pornography, whereas, in Alabama it prohibits only the possession of it. And I know, Your Honor, ruled on my initial motion, and I filed a motion to reconsider. But I'd ask you to reconsider before we do enter a plea of guilty at this time.
"The Court: Okay. Does the State have any comments?
"[Prosecutor]: Judge, we would stand on the arguments and evidence that have been presented previously to the Court. And we do contend that viewing child pornography on a computer screen is possessing child pornography. And we would also argue that when you view it and it's placed into the computer's hard drive or store on the computer as a result of your viewing it, that also constitutes possession of child pornography."
(R. 5-6.) A copy of the partial computer forensic report attached to Ward's motion to dismiss states the following:
"A temporary internet folder sometimes referred to as a cache folder, stores graphics from web sites that are viewed by the computer used. This is done automatically without any input from the computer user. This folder saves the graphics so the next time the computer user visits the web site, the loading of the web site will be faster because the graphics files are already on the computer."
(C.R. 52.)[1]
Ward argues that the circuit court erred in denying his motion to dismiss the indictment because, he argues, his actions did not constitute a violation of § 13A-12-192(b), Ala.Code 1975. Specifically, he argues that there was no evidence that he possessed the obscene materials because he did not download, copy, or otherwise take possession of the materials. Ward cites Girard v. State, 883 So.2d 714 (Ala. Crim.App.2002), aff'd, 883 So.2d 717 (Ala. 2003), to support this argument. He asserts that one cannot be guilty of possessing pornographic materials merely by viewing them on a computer screen. The State argues, that, by purposely downloading the web sites that contained the obscene material, Ward had actual knowledge of and was in constructive possession of the 288 images of child pornography on the downloaded Internet sites.
*296 Section 13A-12-192(b), Ala.Code 1975, defines the offense of possessing obscene matter:
"Any person who knowingly possesses any obscene matter containing a visual reproduction of a person under the age of 17 years engaged in any act of sado-masochistic abuse, sexual intercourse, sexual excitement, masturbation, genital nudity, or other sexual conduct shall be guilty of a Class C felony."
At the time of Ward's actions, § 13A-12-190(12), Ala.Code 1975, defined "matter" as follows:[2]
"Any book, magazine, newspaper, or other printed material, or any picture, photograph, motion picture or electrical or electronic reproduction, or any other articles or materials that either are or contain a photographic or other visual reproduction of a live act, performance, or event."
"Possess" is not defined in relation to this Code section; however, it is defined in the general provisions of the criminal code. Section 13A-1-2(13), Ala.Code 1975, defines "possess" as "[t]o have physical possession or otherwise to exercise dominion or control over tangible property."
As stated above, Ward argues that according to this Court's holding in Girard, he cannot be convicted of possessing obscene matter for viewing child pornography on a computer screen. In Girard, this Court held that the proper unit of prosecution for the offense of possession of obscene matter under § 13A-12-192(b), is the possession of the obscene matter, regardless of how many items one actually possessed. In a footnote in that opinion, we stated: "[Section 13A-12-192(b), Ala. Code 1975,] does not proscribe the act of downloading obscene material or the act of receiving obscene material or the act of creating files of obscene material. The statute proscribes the act of possessing any obscene material." 883 So.2d at 717 n. 2. However, in Girard we did not address the issue presented in this case. Thus, our decision in Girard provides no guidance.
"Child pornography has gone high technology, and there is no sign of the trend abating." Don't Cache Out Your Case: Prosecuting Child Pornography Possession Laws Based on Images Located in Temporary Internet Files, 19 Berkeley Tech. L.J. at 1228. Computer images of child pornography fall within the definition of "obscene matter," as that term is used in § 13A-12-192, Ala.Code 1975. In Rutledge v. State, 745 So.2d 912 (Ala.Crim. App.1999), this Court held that "§ 13A-12-192, Ala.Code 1975, prohibits the possession and dissemination of child pornography by any means, including visual depictions of children engaged in sexual acts displayed on computers, computer diskettes, and the Internet." Therefore, because Ward admitted to knowingly accessing Internet Web sites containing images of child pornography, and to viewing those images on a computer owned by Troy University, the question is whether Ward was in "possession" of the obscene matter.
Alabama has never had occasion to address the specific issue presented by this case; i.e., whether an individual can be in *297 possession of pornographic materials when he or she has viewed the pornographic materials on a computer screen but has not copied or saved those files to the computer. Thus, we have looked to other jurisdictions for guidance. The United State Court of Appeals for the Tenth Circuit in United States v. Tucker, 305 F.3d 1193 (10th Cir.2002), addressed the issue whether a defendant could be convicted of possessing child pornography when he had viewed the prohibited images on his computer but did not save or download the images to the hard drive on his computer. The Court stated:
"Tucker maintains that he did not possess child pornography but merely viewed it on his Web browser.15 He concedes, however, that he knew that when he visited a Web page, the images on the Web page would be sent to his browser cache file and thus saved on his hard drive. Yet, Tucker contends that he did not desire the images to be saved on his hard drive and deleted the images from his cache file after each computer session. There is no merit to this argument.
"18 U.S.C. § 2252A(a)(5)(B) provides that any individual who
"knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains 3 or more images of child pornography that has been ... transported in interstate ... commerce ... shall be punished.
"The statute does not define possession, but in interpreting the term, we are guided by its ordinary, everyday meaning. See Johns v. Stewart, 57 F.3d 1544, 1555 (10th Cir.1995). Possession is defined as `the holding or having something (material or immaterial) as one's own, or in one's control.' Oxford English Dictionary (2d ed. 1989); see also United States v. Simpson, 94 F.3d 1373, 1380 (10th Cir.1996) (defining `knowing possession' in drug context as encompassing situations in which an individual `knowingly hold[s] the power and ability to exercise dominion and control' over the narcotics (quotation omitted)). Tucker contends that because he did not personally save, or `download,' the images to his hard drive, he had no control over them. We agree with the district court, however, that Tucker had control over the files present in his Web browser cache files.
"Customs Agent Daufenbach testified that an individual could access an image in a cache file, attach it to an email, post it to a newsgroup, place it on a Web site, or print a hard copy. He stated, `Just like as with any other data file, you could do almost anything with it.' Agent Hooper similarly testified that an individual could `view [an image in the cache]. He could rename it. He could copy it to a floppy disk. He could email it to somebody. He could modify the file.... Anything he could do with any other file he could do with these files.' This unrebutted testimony conclusively demonstrates Tucker had control over images stored in his cache and thus possessed them.
"Tucker argues, however, that he did not voluntarily cache the files. Rather, he maintains, his Web browser `sav[ed] the images against his will.' Tucker likens his situation to the classic case of Martin v. State, in which the defendant was charged with appearing drunk in public after involuntarily being carried into public by the police. See [31 Ala. App. 334,] 17 So.2d 427, 427 (Ala.Ct.App. 1944). The Martin court held that voluntariness was a necessary element to the crime. See id. The analogy is not apt. The defendant in Martin did not drink with the understanding that he *298 would be taken out in public. Tucker, however, intentionally sought out and viewed child pornography knowing that the images would be saved on his computer. Tucker may have wished that his Web browser did not automatically cache viewed images on his computer's hard drive, but he concedes he knew the Web browser was doing so. Tucker continued to view child pornography knowing that the pornography was being saved, if only temporarily, on his computer. In such circumstances, his possession was voluntary. Since he knew his browser cached the image files, each time he intentionally sought out and viewed child pornography with his Web browser he knowingly acquired and possessed the images.
"15 Tucker makes a related argument that the images he viewed on his Web browser were not child pornography under the statute because they were not `stored' on his computer. 18 U.S.C. § 2252A(a)(5)(B) only criminalizes possession of `child pornography.' Child pornography is defined in 18 U.S.C. § 2256(8) to be `any visual depiction, including... [a] computer or computer-generated image or picture, ... of sexually explicit conduct' engaged in by minors. `Visual depiction' in turn is defined in § 2256(5) to `include [ ] undeveloped film and videotape, and data stored on computer disk ... which is capable of conversion into a visual image.' (emphasis added). Thus, Tucker argues the images found on his computer cannot be considered a visual depiction because they were not data actually stored on his computer but only temporarily displayed on his computer monitor. The argument is not convincing. Section 2256 does not require a visual depiction to be stored data. Rather, the definition merely says that one type of visual depiction is data stored on computer. See id. § 2256(5) (providing that the definition of visual depiction `includes ... data stored on a computer disk' (emphasis added)). Even if the definition required that a visual depiction be data stored on a computer, the images Tucker viewed were contemporaneously stored on his hard drive when his Web browser saved the images to a cache filed."
305 F.3d at 1204-05. Other courts have agreed with the reasoning of the Tucker Court. See United States v. Romm, 455 F.3d 990, 998 (9th Cir.2006) ("In the electronic context, a person can receive and possess child pornography without downloading it, if he or she seeks it out and exercises dominion and control over it."); State v. Lindgren, 275 Wis.2d 851, 866, 687 N.W.2d 60, 67 (2004) ("We adopt the Tucker court[']s reasoning."); United States v. Sanchez, 59 M.J. 566 (A.F.Ct.Crim.App. 2003).
Here, because Ward pleaded guilty to possessing child pornography there is no evidence in the record as to whether Ward was aware that temporary Internet files were being created when he accessed a Web page via the computer at Troy University. However, other jurisdictions have held that an individual's lack of knowledge is not fatal to a charge of possessing child pornography.
In Commonwealth v. Simone, 63 Va. Cir. 216 (2003), a Virginia circuit court, citing United States v. Tucker, disagreed with Simone's argument that he could not be convicted of possessing child pornography because the images were only found on Simone's "computer cache." The court stated:
"In the present case the defendant did not testify, and no direct evidence was presented, as to whether he realized images he viewed were being saved to his cache file.
"The quantum of evidence necessary to prove knowing possession was also addressed in United States v. Perez, 247 F.Supp.2d 459, 484, n. 12 (S.D.N.Y.2003), where the defendant moved to suppress evidence of child pornography obtained with a search warrant. In reviewing the federal child pornography statute, which *299 prohibits the knowing possession of such images, that Court observed that, under the current state of federal law, `whether the statute reached mere internet "browsing" is something of an open question.' Id. The Perez Court noted that the statute does not prohibit the 'viewing' of such images. However, the Perez Court went on to note that, in at least one case, a district court acquitted a defendant on a count of child pornography possession and `explained that one cannot be guilty of possession for simply having viewed an image on a web site, thereby causing the image to be automatically stored in the browser's cache, without having purposely saved or downloaded the image.' Id., citing United States v. Stulock, 308 F.3d 922, 925 (8th Cir.2002) (where the court of appeals recited the holding of the district court on this issue).
"In deciding whether the defendant knowingly possessed the cached images in this case, the Court finds it helpful to analogize possession via the computer to other methods of possession. However, the starting point for such an examination must be the language of the statute. The Virginia statute does not prohibit viewing, it prohibits possession. The Virginia Supreme Court has recognized that the word `possession' has `many and various meanings.' Borum v. National Valley Bank of Staunton, 195 Va. 899, 907, 80 S.E.2d 594, 598 (1954), For example, it can mean that one can exercise his power over property at pleasure, or that one has custody and control over something that is subject to disposition. Id. Black's Law Dictionary defines possession as `the detention and control, or the manual or ideal custody, of anything which may be the subject of property, for one's use and enjoyment, either as owner or as the proprietor of a qualified right in it, and either held personally or by another who exercises it in one's place and name.' Black's Law Dictionary 1047 (5th ed. 1979). Webster's Dictionary defines `possess' as `to have as property,' `to acquire mastery of or have knowledge of,' `to gain or exert influence over,' and `to control or maintain in a given condition.' Webster's II College Dictionary 861 (2001). In the present context, this Court synthesizes these definitions and cases in the computer context and asks the following question: Did the defendant reach out for and control the images at issue.
"The Court also observes that asking whether a defendant has reached out for and controlled the images recognizes and promotes the purpose behind the statute. As the Court noted in its October 10, 2003, Opinion and Order, both the Virginia Supreme Court and U.S. Supreme Court have recognized that the purposes behind such statutes include protection of the physical and psychological well being of juveniles, New York v. Ferber, 458 U.S. 747, 756-57, 102 S.Ct. 3348, 3354, 73 L.Ed.2d 1113, 1122 (1982); Freeman v. Commonwealth, 223 Va. 301, 305, 309, 288 S.E.2d 461, 463, 465 (1982), and destruction of the market for the exploitative use of children. Osborne v. Ohio, 495 U.S. 103, 109, 110 S.Ct. 1691, 1696, 109 L.Ed.2d 98, 109 (1990); Freeman, 223 Va. at 309, 288 S.E.2d at 465. If there is no reaching out for and controlling of such images, then presumably juveniles will be in less demand for such exploitation, with a resulting reduction in physical and psychological harm.
"By analogy, one might consider the following hypothetical. If a person walks down the street and notices an item (such as child pornography or an illegal narcotic) whose possession is prohibited, has that person committed a *300 criminal offense if they look at the item for a sufficient amount of time to know what it is and then walks away? The obvious answer seems to be `no.' However, if the person looks at the item long enough to know what it is, then reaches out and picks it up, holding and viewing it, and taking it with them to their home, that person has moved from merely viewing the item to knowingly possessing the item by reaching out for it and controlling it. In the same way, the defendant in this case reached out for prohibited items and, in essence, took them home.
"There are several other pieces of evidence in this case that provide convincing indicia of knowing possession. The Internet searches conducted by the defendant, as revealed by Agent Jones, show that he was reaching out for images involving child pornography. As the testimony revealed, one of his search terms was `Lolitas,' a common term in the search for child pornography according to the testimony. See United States v. Grimes, 244 F.3d 375, 379, n. 7 (5th Cir.2001) (noting `Lolita' is often, a code word for child pornography). Further terms included pedophilia, pre-teen pictures, etc. Additionally, the defendant possessed numerous computer printouts of stories involving graphic sexual activity of juveniles. Id. at 384. (noting relevance of such items) ... These stories reveal the defendant's interest in sexual activity of juveniles. This evidence, in conjunction with the defendant's knowing possession of another child pornography image which had to be manually downloaded onto the wall paper of his computer and which was visible every time the computer was turned on, combines to show beyond a reasonable doubt that the defendant reached out for these images with the intent to control and have dominion over them."
In State v. Mobley, 129 Wash.App. 378, 118 P.3d 413 (2005), the Washington Court of Appeals stated that the issue of possession in the context of computer images concerns whether the defendant "reached out for and exercised dominion and control" over the images. It stated:
"When synthesized with Washington's constructive possession law, the core question seems to be whether the totality of the circumstances establishes that a defendant reached out for and exercised dominion and control over the images at issue. See id. [United States v. Perez, 247 F.Supp.2d 459 (S.D.N.Y. 2003)]; see also [United States v.] Tucker, 305 F.3d [1193] 1204 [(10th Cir. 2002)]; [State v.] Callahan, 77 Wash.2d [27] at 29, 459 P.2d 400 [(1969)]. This approach recognizes and promotes the purposes behind Washington's child pornography statute, to protect children by discouraging their sexual exploitation for commercial gain and personal satisfaction. See RCW 9.68A.001. Therefore, evidence of `reaching out for' and `controlling' child pornographic images is incriminating, while inadvertent viewing questions are left to the fact finder."
129 Wash.App. at 385, 118 P.3d at 416. In United States v. Romm, 455 F.3d 990, 998 (9th Cir.2006), the court stated:
"Here, we hold Romm exercised dominion and control over the images in his cache by enlarging them on his screen, and saving them there for five minutes before deleting them. While the images were displayed on Romm's screen and simultaneously stored in his laptop's hard drive, he had the ability to copy, print, or email the images to others. Thus, this evidence of control was sufficient for the jury to find that Romm possessed and received the images in his cache."
*301 Alabama's child-pornography statute, § 13A-12-192, Ala.Code 1975, does not define "possess" but Alabama has long recognized that possession may be either actual or constructive.
"`Constructive possession exists when the defendant exercises, or has the power to exercise, dominion and control over the item.' United States v. Laughman, 618 F.2d 1067, 1077 (4th Cir.1980); United States v. Phillips, 496 F.2d 1395, 1397 (5th Cir.1974), cert. denied, 422 U.S. 1056, 95 S.Ct. 2680, 45 L.Ed.2d 709 (1975). `Constructive possession may be determined by weighing those facts which tend to support the defendant's necessary control over the substance against those facts which demonstrate a lack of dominion and control.' Roberts, 349 So.2d at 91."
German v. State, 429 So.2d 1138, 1140 (Ala.Cr.App.1982). The German Court further stated:
"`The possession vital to the convictions under review may, in familiar language, be either actual or constructive. It thus is unnecessary to show that the accused had the drug on this person or within his immediate reach; it is enough that he `was knowingly in a position or had the right to exercise dominion and control over' it, either directly or through others. Possession in that sense suffices though it is jointly shared, and it may be established by circumstantial as well as direct evidence.
"`We are aware of criticismson grounds of imprecisionof the constructive-possession doctrine, thus formulated, as a measure of the legal sufficiency of evidence to demonstrate drug-possession. We think, however, that this adjudicative standard becomes acceptable when it is realized that the critical inquiry for judges is whether the factfinder can reasonably conclude from the proof that the accused likely had some appreciable ability to guide the destiny of the drug. Even were we free to do otherwise, we would adhere to that concept in preference to artificial rules restricting evidence-sufficiencyrules that would inevitably invade the traditional province of the jury to assess the significance of circumstantial evidence, and to determine whether it eliminates all reasonable doubt as to whether the accused had that power.'"
429 So.2d at 1141-42, quoting United States v. Staten, 581 F.2d 878, 882-885 (U.S.App.D.C.1978).
After considering Alabama's definition of possession in relation to computer images, we believe that the question becomes: Did the defendant specifically seek out the prohibited images and did he have the ability to exercise dominion and control over those images?
Here, the record shows that the child pornography was saved as temporary Internet files on Troy University's computer. Because Ward pleaded guilty, we do not know whether Ward was aware that the Web pages were automatically saved. However, a forensic examination of the computer showed that Ward "reached out" for 288 images of child pornography. Though the factual basis is silent as to whether Ward copied, printed, e-mailed, or sent the images to his home computer, and there is no other indication in the record indicating that he did so, Ward had the ability to do so when he was viewing the downloaded Web pages. Also, we note that Ward's home computer was seized and found to contain child pornography. Applying the broad definition of constructive possession recognized in Alabama, we find that the evidence was sufficient to *302 show that Ward exercised dominion and control over the child pornography and thus was in possession of child pornography.
For the foregoing reasons, we affirm Ward's conviction for violating § 13A-12-192, Ala.Code 1975.
AFFIRMED.
McMILLAN, SHAW, WISE, and WELCH, JJ., concur.
BASCHAB, P.J., dissents, with opinion.
BASCHAB, Presiding Judge, dissenting.
In Girard v. State, 883 So.2d 714, 717 n. 2 (Ala.Crim.App.2002), aff'd, 883 So.2d 717 (Ala.2003), this court specifically noted:
"[Section 13A-12-192(b), Ala.Code 1975,] does not proscribe the act of downloading obscene material or the act of receiving obscene material or the act of creating files of obscene material. The statute proscribes the act of possessing any obscene material."
Also, in R.K.D. v. State, 712 So.2d 754, 757-58 (Ala.Crim.App.1997), we stated:
"`A basic rule of review in criminal cases is that criminal statutes are to be strictly construed in favor of those persons sought to be subjected to their operation, i.e., defendants. Schenher v. State, 38 Ala.App. 573, 90 So.2d 234, cert. denied, 265 Ala. 700, 90 So.2d 238 (1956).
"`Penal statutes are to reach no further in meaning than their words. Fuller v. State, 257 Ala. 502, 60 So.2d 202 (1952).
"`One who commits an act which does not come within the words of a criminal statute, according to the general and popular understanding of those words, when they are not used technically, is not to be punished thereunder, merely because the act may contravene the policy of the statute. Fuller v. State, supra, citing Young's Case, 58 Ala. 358 (1877).
"`No person is to be made subject to penal statutes by implication and all doubts concerning their interpretation are to predominate in favor of the accused. Fuller v. State, supra.'
"Clements v. State, 370 So.2d 723, 725 (Ala.1979), overruled on other grounds, Beck v. State, 396 So.2d 645 (Ala.1980) (cited with approval in Ex parte Mutrie, 658 So.2d 347, 349 (Ala.1993)). `"Further, it is well established that criminal statutes should not be `extended by construction.' Locklear v. State, 50 Ala. App. 679, 282 So.2d 116 (1973)." Ex parte Evers, 434 So.2d 813, 817 (Ala. 1983).' Ex parte Mutrie, 658 So.2d at 349. Finally, § 13A-1-6, Code of Alabama 1975, provides, in pertinent part, that: `All provisions of [the Criminal Code] shall be construed according to the fair import of their terms to promote justice and to effect the objects of the law....'
"In Sheffield v. State, 708 So.2d 899 (Ala.Cr.App.1997), this court addressed the implications of § 13A-1-6, Code of Alabama 1975, as that section pertains to the construction of criminal statutes:
"`The focus in § 13A-1-6 on the "fair import of [a penal statute's] terms" is the legislature's manifestation of its "preference for the meaning of the statute over legislative intent as a criterion of interpretation." 2A N. Singer, Sutherland Statutory Construction § 45.07 (5th ed. 1992). "The reference to a `meaning of the statute' which is juxtaposed with and therefore distinct from legislative `intention,' expresses concern for giving effect to the way in which the statute is understood by others than the members of the legislature itself." Id. "Inquiry *303 begins not with conjecture about what [the legislature] would have liked to have said when it wrote the statute or with what [the legislature] would say today given the chance, but rather what [the legislature] indeed expressed in the statutory context." Id.'

"708 So.2d at 905 (emphasis supplied)."
Based on the scant record before this court, there is not any indication that the appellant in any way saved the images to a diskette, a CD, a hard drive, or any other type of data storage device. Cf. Girard, supra; Rutledge v. State, 745 So.2d 912 (Ala.Crim.App.1999). Rather, it appears that he simply viewed the images on the computer monitor. Although such conduct is repulsive and reprehensible, it simply does not rise to the level of possession, as is required by § 13A-12-192(b), Ala.Code 1975. Therefore, the trial court erred in denying the appellant's motion to dismiss the indictment against him. Accordingly, I respectfully dissent.
NOTES
[1] "A cache (pronounced `cash') is a storage mechanism designed to speed up the loading of internet displays. When a computer user views a webpage, the web browser stores a copy of the page on the computer's hard drive in a folder or directory. That folder is known as the cache, and the individual files within the cache are known as temporary internet files." Ty E. Howard, Don't Cache Out Your Case: Prosecuting Child Pornography Possession Laws Based on Images Located in Temporary Internet Files, 19 Berkeley Tech. L.J. 1227, 1229-30 (2004).
[2] The legislature amended the definition of "matter" effective June 1, 2006. The definition now reads: "Any book, magazine, newspaper, or other printed material, or any picture, photograph, motion picture, video cassette, tape, record, digital video disk (DVD), video compilation, or electronic depiction in a comparable format, or an image, file, download, or other content store, or reproduced by using a computer or electronic device or other digital storage, or any other thing, articles, or materials that either are or contain a photographic or other visual depiction of a live act, performance, or event."