NOT DESIGNATED FOR PUBLICATION

No. 126,133

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT NELSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; AARON T. ROBERTS, judge. Submitted without oral argument. Opinion filed April 12, 2024. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Kayla Roehler*, deputy district attorney, *Marc A. Dupree*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., MALONE, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: Robert Nelson appeals his convictions for five counts of sexual exploitation of a child. First, he contends that the district court erred by denying his motion for judgment of acquittal and by ordering him to serve lifetime postrelease supervision because the State failed to present evidence of Nelson's age. Second, he argues that his right to a fair trial was denied by the prosecutor's error in defining "possession" during closing argument. Having thoroughly reviewed the record, we find no error.

*Factual and Procedural History*

On the night of October 9, 2019, officers of the Kansas City, Kansas Police Department responded to a call about a man found under a girl's bed. Through the officers' investigation, Nelson became a suspect. A search warrant for Nelson's mother's house and the makeshift tent in its backyard, where Nelson stays, was then issued and executed.

During the search of Nelson's backyard tent, officers recovered a cell phone, then copied and analyzed its contents. Those results, coupled with Nelson's suspected conduct on the night of October 9th, led the State to charge him with five counts of sexual exploitation of a child. The State also charged Nelson with three counts of aggravated burglary, one count of attempted aggravated indecent liberties with a child, and one count of aggravated criminal sodomy, but some of those charges stemmed from conduct on other dates.

At Nelson's preliminary hearing on the October 9th incident, the State presented testimony from two of the adult occupants of the house and a detective with the Kansas City, Kansas Police Department. The State also admitted into evidence a flash drive containing five images from Nelson's cell phone. The district court bound Nelson over on five counts of sexual exploitation of a child.

At Nelson's jury trial on those five counts of sexual exploitation, the State called three witnesses, all of whom were with the Kansas City, Kansas Police Department. We summarize the testimony here. Brian Johnson, a crime scene officer, testified to details surrounding his retrieval of a cell phone from Nelson's tent in October 2019.

Jason Gorman, a member of a digital forensics taskforce that had made a digital copy of Nelson's cell phone, testified that he had completed a Cellebrite forensic

2

extraction of the contents of that phone. "Cellebrite" is a forensic tool used to extract "forensically sound images" from a phone. The Cellebrite extraction process "basically cop[ies] the data from a cell phone or tablet or whatever the target device is onto a different hard drive. That's called an image." That image is then processed into a usable readable form by a "forensically sound" process, meaning the data on the target device is not altered but is converted into a viewable image. Gorman elaborated:

> "So we'll take the image and process the image through Cellebri[te]'s physical analyzer and that basically takes the image and breaks it all back down to what we are normally used to seeing. We see text message, not bytecode, we see images of pictures and not, you know, again raw images and data. So we process the image into a usable form. We can pass along and view and analyze later."

Gorman discussed some of the information on the cell phone, such as its search history. For example, the user searched "black 12-year-old cutie model nude" on October 10, 2019, on the Google Chrome internet browser on the cell phone. Other searches on the cell phone's Chrome browser included "black 12 year old porn," also on October 10 and "black lickable ebony girl 12Y," on October 4.

Gorman then discussed the mechanics of downloading content to a cell phone. He explained:

> "Sometimes there's a link connected or embedded into the Web page that would allow you to do a download and you could download a file or picture or whatever. Other times you can right click and go to downloads basically from the Web browser. There's several different ways to download but they all would again require user interaction."

According to Gorman, on a cell phone, holding down on an image will also give the user an option to download the image.

Next, Detective Michael Eckel, a sex crimes investigator, testified. On October 11, 2019, the police executed a search warrant of Nelson's body to look for dog bite injuries from the October 9th incident when Nelson was suspected to have been found under a child's bed before fleeing out of the bedroom's window and into a neighbor's backyard where there was a dog. When they asked Nelson to take off his clothing, a cell phone fell out. Eckel found the phone distinctive because it appeared to have "a bulge or a tape or something [he] couldn't really describe" on its back. Eckel later discovered that the "something" appeared to be a burn.

Later that same day, officers executed a search warrant on Nelson's makeshift tent, and in that tent Eckel recognized the same cell phone. The officers took the phone as evidence and, after getting a search warrant for it, sent it to Gorman to be imaged on Cellebrite. After reviewing the contents of the cell phone, including its contacts, photos, and linked email accounts, Eckel concluded that it belonged to Nelson.

When Eckel opened the photos on Nelson's phone, he immediately saw what he recognized as child pornography. Eckel stopped his search and completed a new affidavit for a search warrant because child pornography was a different offense than Eckel was investigating. Once he received the new search warrant, Eckel resumed examining the contents of Nelson's phone.

On the phone's cookie information Eckel found many pornographic websites, some of which pertained specifically to child pornography, such as "pretinyteenporn.pw." After investigating the sites in Nelson's browser history, Eckel identified at least 26 different websites specifically geared toward child pornography. Eckel then again looked at Nelson's photos on his cell phone and found a large number of pornographic pictures. Some pictures depicted girls under 16 years old and others depicted girls under 10 years old. He could make this assessment based on the subjects' "body development," "facial features," breast development," and "hair on the genitals."

The State then introduced and Eckel described 13 pictures found on Nelson's phone: (1) three unclothed "pre-pubescent girls by a sprinkler outside"; (2) "a young nude girl holding up" the number five; (3) "two very young girls naked"; (4) a "fully nude young girl"; (5) "two young girls fully sitting"; (6) a "very young girl laying on a couch with her pubic region exposed"; (7) two "young girls fully viewable from the top half, nude"; (8) a "fully nude girl walking on the beach"; (9) a girl fully nude; (10) a girl fully nude; (11) a "top half fully nude young girl"; (12) "a young boy engaged in sexual intercourse"; (13) a "young girl engaging in oral penetration." The State also asked if Nelson's phone contained any pornographic videos, and Eckel testified there were several: "There were two pornographic videos involving the Little Mermaid cartoon. There were multiple other video/audio tapes, one video of a young girl, I stated to be 11 or 12, completely nude, taking a shower."

Eckel testified that from the data law enforcement had retrieved, he could tell that six of the photos had been downloaded to Nelson's phone between October 1 and October 4, 2019. The remaining exhibits did not have access dates in their data.

After the presentation of the above evidence, the State rested. Nelson then moved for a judgment of acquittal, arguing only that the State had failed to prove intent. He argued that no juror could find proof beyond a reasonable doubt as to the crimes of sexual exploitation of a child because the State had failed to prove that Nelson had acted with the intent to arouse or satisfy his (or another person's) sexual desires or appeal to his (or another person's) prurient interest. The State disagreed, arguing in response that it had presented lots of testimony about different porn websites and cookies and searches that Nelson had done, and that his acts, coupled with the content of some photographs, proved that Nelson had done so with the intent to arouse.

The district court denied Nelson's motion for judgment of acquittal, holding that the jury had the right to infer the reason Nelson was doing those things and could use

common sense and experience as to the reasons why people visit child pornography sites, so the State had more than met its burden.

Nelson then testified in his own defense. When his attorney asked his age, he responded that he was 42 years old. Nelson testified that he did not recognize the phone that police had searched, that it appeared smaller than his phone, and that it did not resemble any of his other phones. Nelson was unsure how that phone would have gotten into his tent. He then testified that he had purchased a used phone that was similar from eBay in July 2019, and he had not done a factory reset on it. Nelson stated that before trial he had never seen the photos presented by the State. He denied having used a browser to make any searches on the phone, having made any searches on any of his devices for pornographic sites, having downloaded the pornographic material admitted as evidence, and having personally taken those images. When Nelson finished his testimony, defense counsel renewed its motion for judgment of acquittal and the district court again denied it.

After deliberations, the jury found Nelson guilty of all five counts of sexual exploitation of a child. The district court later sentenced Nelson to a controlling sentence of 64 months' imprisonment. The court also ordered lifetime postrelease supervision. See K.S.A. 22-3717(d)(1)(G)(i), (d)(5)(H). Nelson now appeals, raising two issues.

*Did the District Court Err in Denying Nelson's Motion for Judgment of Acquittal and Later Ordering Him to Lifetime Postrelease Supervision?*

First, Nelson argues that the district court erred by denying his motion for judgment of acquittal and later ordering him to lifetime postrelease supervision. Nelson essentially uses the denial of the motion for judgment of acquittal as a nexus to argue that Nelson should not have been ordered to lifetime postrelease supervision because the State did not present evidence of Nelson's age. Nelson does not attack any element of his

6

convictions but attacks application of the sentencing rule that resulted in lifetime postrelease supervision. The State responds that Nelson waived any error by presenting evidence of his age during Nelson's direct examination.

"A challenge to a denial of a motion for acquittal is, at the core, a challenge to the sufficiency of the evidence." *State v. Cottrell*, 310 Kan. 150, 163, 445 P.3d 1132 (2019).

> "When examining the sufficiency of the evidence in a criminal case, the standard of review is whether, after reviewing all the evidence in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. The appellate court does not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence. [Citations omitted.]" *State v. Raskie*, 293 Kan. 906, 919-20, 269 P.3d 1268 (2012).

And if Nelson's argument involves statutory interpretation, that argument presents a question of law over which appellate courts have unlimited review. *State v. Keys*, 315 Kan. 690, 697, 510 P.3d 706 (2022).

Here, after the presentation of the State's case in chief, Nelson moved for judgment of acquittal. He argued that the State did not present a case in which a juror could find proof beyond a reasonable doubt as to the crimes of sexual exploitation of a child because there was not "any evidence specifically that [Nelson] did this with the intent to arouse or satisfy the sexual desires or appeal to the purulent [sic] interest of [Nelson] or another person." And, as discussed above, the district court denied this motion, holding the "Jury has the right to infer . . . the reason that he is doing those and, again, they can use common sense and experience as to the reasons why people visit pornography sites, child porn or otherwise."

Nelson was charged with five counts of sexual exploitation of a child under K.S.A. 21-5510(a)(2). A plain reading of this statute shows that there is no age element for the

offender. The statute defines sexual exploitation of a child as "possessing any visual depiction of a child under 18 years of age shown or heard engaging in sexually explicit conduct with intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender or any other person." The only age requirement in the statute is that of the child, mandating that the victim in the visual depiction be under the age of 18 years old. See K.S.A. 21-5510(a)(2).

The age of the offender is relevant only when sentencing the person found guilty of sexually exploiting a child. Under K.S.A. 22-3717(d)(1)(G)(i):

> "[P]ersons sentenced to imprisonment for a sexually violent crime committed on or after July 1, 2006, when the offender was 18 years of age or older, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life."

Sexual exploitation of a child is a "sexually violent crime." K.S.A. 22-3717(d)(5)(H). When the offender is under age 18, the district court must sentence the offender to 60 months' postrelease supervision. K.S.A. 22-3717(d)(1)(G)(ii). Not so here, where Nelson was 42 at the time of his crimes.

Nelson seems to invoke the *Apprendi* rule here, suggesting that because the State failed to prove his age, and his age increases his penalty from 60 months' postrelease supervision to lifetime postrelease supervision, the court cannot base his sentence on that fact not submitted to the jury. See *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt").

But Nelson styles this claim of error as an improper denial of his motion for judgment of acquittal rather than as an illegal sentence. We see two problems with this. First, Nelson made no argument in his motions for judgment of acquittal that the State had failed to present evidence of his age. Rather, Nelson's entire argument for acquittal was that the State had failed to prove that he had the intent required by the sexual exploitation of a child statute. And the crime of sexual exploitation of a child has no age element for the offender. K.S.A. 21-5510(a)(2); *State v. Dinh Loc Ta*, 296 Kan. 230, 236, 290 P.3d 652 (2012). At the time of Nelson's motions for acquittal, the State had sufficiently met its burden to prove every element of the crime charged. We thus find no error in the district court's denial of Nelson's motions for judgment of acquittal.

Second, even if Nelson may generally contend that the district court erred by sentencing him to lifetime postrelease supervision, we disagree. Nelson did not raise the issue of his age to the district court, and generally, a constitutional challenge may not be asserted for the first time on appeal. *State v. Anthony*, 273 Kan. 726, 727, 45 P.3d 852 (2002). Although exceptions to this rule exist, see *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021), Nelson does not invoke any of them, as is necessary to preserve our review. See Supreme Court Rule 6.02(a)(5) (2023 Kan. S. Ct. R. at 36); *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). And even had he done so, the decision to review an unpreserved claim under an exception is prudential. *State v. Parry*, 305 Kan. 1189, 1192, 390 P.3d 879 (2017). So even if an exception would support a decision to review a new claim, we have no duty to do so. *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020).

But even if Nelson had preserved this claim, we would deny it. Nelson admitted during his testimony that he was 42 years old. The district court's later use of that evidence to apply K.S.A. 22-3717(d)(1)(G)(i) and sentence Nelson to lifetime postrelease supervision did not violate *Apprendi*. See *United States v. Booker*, 543 U.S. 220, 244, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005); *Blakely v. Washington*, 542 U.S. 296, 303, 124

9

S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (holding that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant").

For those reasons, we find no error in the district court's denial of Nelson's motions for acquittal, or in its sentencing Nelson to lifetime postrelease supervision.

*Did the State Deny Nelson's Right to a Fair Trial by Committing Prosecutorial Error in Its Closing Argument?*

Next, Nelson argues that his right to a fair trial was denied during closing argument because the prosecutor diluted its burden of proof on the element of "possession." The State responds that the prosecutor's comments, viewed in context, correctly stated the law.

We use a two-step process to evaluate claims of prosecutorial error: error and prejudice. *State v. Sieg*, 315 Kan. 526, 535, 509 P.3d 535 (2022).

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

See also *State v. Fraire*, 312 Kan. 786, 791-92, 481 P.3d 129 (2021). To the extent resolution of Nelson's argument involves statutory interpretation, this presents a question of law over which we have unlimited review. *Keys*, 315 Kan. at 697.

Nelson targets the following statement: "If you're looking at something on your phone, the State submits that is possession, that looking at pictures of children in sexually explicit conduct on your phone, the State says, and I ask you to find that that is possession." Nelson did not object to this statement, but no contemporaneous objection is necessary to preserve our review of a claim of prosecutorial error in closing argument. *State v. Sean*, 306 Kan. 963, 974, 399 P.3d 168 (2017). Still, we may use the absence of an objection in analyzing the alleged error. *State v. Butler*, 307 Kan. 831, 864, 416 P.3d 116 (2018).

The "wide latitude" given to prosecutors to present their case extends to allegedly erroneous comments made in closing arguments. *State v. Timley*, 311 Kan. 944, 949, 469 P.3d 54 (2020); *State v. Tahah*, 302 Kan. 783, 787, 358 P.3d 819 (2015). "In determining whether a particular statement falls outside of the wide latitude given to prosecutors, the court considers the context in which the statement was made, rather than analyzing the statement in isolation." *Timley*, 311 Kan. at 949-50 (citing *State v. Thomas*, 307 Kan. 733, 744, 415 P.3d 430 [2018]). "[A] prosecutor falls outside his or her wide latitude, and thus commits error, if he or she misstates the law" during closing arguments. *State v. Watson*, 313 Kan. 170, 179, 484 P.3d 877 (2021).

So we begin by reviewing the law of possession, as applied to Nelson. Nelson was convicted of five counts of sexual exploitation of a child, under K.S.A. 21-5510(a)(2). That crime is defined as: "possessing any visual depiction of a child under 18 years of age shown or heard engaging in sexually explicit conduct with intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender or any other person." K.S.A. 21-5510(a)(2). "Possession" is defined as "knowingly having joint or exclusive

11

control over an item or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 21-5111(v). "Control" is not defined by statute, but Black's Law Dictionary defines it as "[t]o exercise power or influence over." Black's Law Dictionary 416 (11th ed. 2019).

Although Kansas law is scant on the issue, Nelson may be correct that simply "looking at" an image is not enough to constitute possessing it. See *United States v. Tucker*, 305 F.3d 1193, 1203-05 (10th Cir. 2002); *State v. Ballantyne*, 64 Kan. App. 2d 14, 24, 543 P.3d 1152 (2024) ("Kansas law does not expressly prohibit the viewing of child pornography."); *Ward v. State*, 994 So. 2d 293, 299-300 (Ala. Crim. App. 2007).

But the evidence shows that Nelson did more than just view images on his phone. As discussed at Nelson's trial, downloading images to an electronic device requires an overt act. That act could be dragging and dropping the material from the browser to the device's storage, right clicking and saving the material to the electronic device, or holding down on the material on the device's screen and selecting an option to save or download the material from the menu that pops up. See Webster's New World College Dictionary 440 (5th ed. 2018) (defining "download" as "to transfer electronically [a copy of a file or program] from a central computer, a website, etc. to a terminal, personal computer, etc.").

And testimony established that Nelson downloaded to his cell phone the five images on which his conviction was based. By downloading the child pornography to his device, Nelson knowingly kept it in a place where he had some measure of access to it and right of control over it, just as if he had kept hard copies of such photographs in his makeshift tent. That is possession under K.S.A. 21-5111(v). See *Ballantyne*, 64 Kan. App. 2d at 16-18 (finding possession element not met for images in unallocated storage space where average computer users cannot access data; yet finding possession element met for images once downloaded and found in computer's recycling bin where it was recoverable by users); *State v. Sellers*, No. 107,203, 2013 WL 4404175, at *2-3 (Kan.

12

App. 2013) (unpublished opinion) (finding circumstantial evidence that defendant downloaded photographs and movies, proving he knowingly and intentionally possessed files).

Next, we examine the prosecutor's statements in light of that law and in context, italicizing the targeted language below.

"And you also heard evidence about dates. You heard when the defendant had access to his phone. You heard dates about the downloads. You also heard dates when the defendant was looking at those Web sites and doing those searches and those cookies. You can look at those dates. You also heard from the detective that he looked at the location today that the defendant spent most of his time around that 4515 Maggie Lane, and that's here in Wyandotte County, Kansas. With 'possession,' the definition is joint or exclusive control over an item with knowledge of and intent to have such control. There's no time limit on possession. There's nothing in this definition that talks about how long you have to have something to possess it. *If you're looking at something on your phone, the State submits that is possession, that looking at pictures of children in sexually explicit conduct on your phone, the State says, and I ask you to find that that is possession*." (Emphasis added).

In the State's closing rebuttal, it stated:

"I talked a little about possession. There are multiple of the exhibits that were downloaded. Officer Gorman talked about how the images were downloaded, they were in the user data partition and downloaded into that. The State submits to you that downloading an item is having control of it. And he was keeping an item in a place where that person has measured access. If the person is accessing it, they have control over it. They're looking at that."

When isolating the targeted comments, we agree they are problematic. Looking at images on one's phone may not be enough to show possession. Yet we cannot view a prosecutor's comments in isolation and must view them in context. See *Timley*, 311 Kan.

13

at 949-50. Doing so shows that the prosecutor was talking about looking at downloaded images on a cell phone and using that device as a conduit for viewing the images, rather than physically possessing the pornographic material, such as a hard copy of a photograph, a video, or a magazine. The prosecutor argued that downloading an item is having control of it, that Nelson kept those items in a place where he had access to it, and that since he accessed it, he had control over it. Her concluding statement—"they're looking at that"—clarifies that she was referring to downloaded images.

When read in context, the statements did not misstate the law. We find no prosecutorial error, thus we need not examine prejudice.

Affirmed.