**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Anthony DIODORO, Appellant.**

Superior Court of Pennsylvania.

Argued May 8, 2007.

Filed Aug. 23, 2007.

———

Mark P. Much, Media, for appellant.

Michelle P. Hutton, Asst. Dist. Atty., for Com., appellee.

BEFORE: JOYCE *, STEVENS, LALLY–GREEN, TODD, KELIN, BENDER, GANTMAN, McCAFFERY, and PANELLA, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Delaware County on May 23, 2005, following Appellant's conviction by a jury of thirty (30) counts of sexual abuse of children for possessing child pornography[1] and one (1) count of criminal use of a communication facility.[2] In this case of first impression, Appellant challenges the sufficiency of the evidence in support of the jury verdicts. We affirm the judgment of sentence.

¶ 2 On or about November 20, 2003, pursuant to a search warrant for Appellant's personal computer, members of the Ridley Township Police Department seized the computer from Appellant's residence.

---

* This decision was reached prior to August 17, 2007 with Judge Joyce's participation.

**1.** 18 Pa.C.S.A. § 6312(d).

**2.** 18 Pa.C.S.A. § 7512(a).

Following forensic examination of the computer, it was found to contain three hundred seventy (370) photographs of suspected child pornography, thirty (30) of which were known to be child pornography. Appellant was arrested and charged with the aforementioned offenses and, following a jury trial, was convicted thereof. On May 23, 2005, Appellant was sentenced, *inter alia,* to an aggregate nine (9) to twenty-three (23) month term of imprisonment, to be followed by a five (5) year term of probation. Appellant filed an appeal challenging the sufficiency of the evidence.

¶ 3 On November 2, 2006, a panel of this Court issued an opinion in which it found that the evidence was insufficient to sustain his conviction for knowing possession of child pornography under 18 Pa.C.S.A. § 6312(d) and criminal use of a communication facility under 18 Pa.C.S.A. § 7512(a). The Commonwealth filed a timely application for *en banc* reargument, which was granted on January 10, 2007, and the November 2, 2006 opinion was then withdrawn. We now affirm the judgment of sentence.

¶ 4 As to a challenge to the sufficiency of the evidence, we must determine:

whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict[-]winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no facts supporting a finding of guilt may be drawn. The fact-finder, when evaluating the credibility and weight of the evidence, is free to believe all, part, or none of the evidence.

*Commonwealth v. Stevenson,* 894 A.2d 759, 773 (Pa.Super.2006) (citations and quotations omitted).

¶ 5 Pursuant to 18 Pa.C.S.A. § 6312, **Sexual Abuse of Children,** subsection 6312(d), **Possession of Child Pornography:**

Any person who knowingly possesses **or** controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act is guilty of a felony of the third degree.

18 Pa.C.S.A. § 6312(d) (emphasis added).

¶ 6 Criminal use of a communication facility is defined in 18 Pa.C.S.A. § 7512, which provides that:

A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title. . . .

18 Pa.C.S.A. § 7512(a).

¶ 7 With regard to § 6312, the Commonwealth must prove the following three (3) elements beyond a reasonable doubt in order to convict an individual of this offense: there must be a depiction of an actual child engaged in a prohibited sexual act or a simulated sexual act; the child depicted must be under the age of eighteen (18); and the defendant must have knowingly possessed **or** controlled the depiction. *Commonwealth v. Koehler,* 914 A.2d 427, 436 (Pa.Super.2006).

¶ 8 At trial, the parties stipulated that: The 30 unlawful images located on the hard drive of [Appellant's] computer depicted, pictured and showed female chil-

dren engaged in prohibited sexual acts. Those acts include sexual intercourse, oral sexual intercourse, and lewd exhibition of the genitals.

The second fact is that the 30 unlawful images were viewed by [Appellant] on his computer while he was searching the World Wide Web for images of females under age 16.

N.T. 2/24/05 at 250–251.

¶ 9 Because Appellant admitted to knowingly accessing Web sites containing images of child pornography, and to viewing those images on his computer, the remaining issue before us is whether the evidence proved that Appellant knowingly possessed or controlled the thirty (30) images in question within the purview of § 6312(d). Appellant asserts that he neither saved nor downloaded child pornography, but instead, merely viewed the images. He contends that his actions did not constitute possession of the material pursuant to § 6312(d). He adds that the presence of the pornographic images in the internet cache file, absent evidence that he knew that the images would be automatically saved to that file, did not satisfy the possession dictates of § 6312(d).[3] Finally, Appellant claims that his use of a computer to view pornographic images on a Web site, without having knowingly saved or downloaded the images or paid a fee to view the site, did not constitute the crime of criminal use of a communication facility under § 7512.

¶ 10 We focus our discussion and analysis of § 6312 and Appellant's actions on the term "control," and, in doing so, we are guided by its ordinary, everyday meaning. Control means, *inter alia,* "[t]o exercise restraining or directing influence over.... The ability to exercise a restraining or directing influence over something." Black's Law Dictionary 329 (6th ed.1990).

¶ 11 Herein, Appellant intentionally sought out and viewed child pornography. His actions of operating the computer mouse, locating the Web sites, opening the sites, displaying the images on his computer screen, and then closing the sites were affirmative steps and corroborated his interest and intent to exercise influence over, and, thereby, control over the child pornography.[4] *Cf. Commonwealth v. Armstead,* 452 Pa. 49, 305 A.2d 1 (1973) (A showing that a defendant was aware of the presence of the article that constitutes contraband establishes an intent to exercise control over such contraband). Moreover, further evidence of Appellant's control over the images was born out by the testimony of Officer Salerno, who stated that the fact that multiple images were stored in the cache files indicates that someone, after accessing the particular Web sites, had to click the "next" button on the screen to view successive images. N.T. 2/24/05 at 230–231. Finally, while Appellant was viewing the pornography, he had the ability to download the images, print them, copy them, or email them to others,

---

3. The Commonwealth presented the testimony of Pennsylvania State Police Officer Peter J. Salerno, a computer forensics expert, who testified, *inter alia,* that when a Web site is viewed, the image is automatically saved to an internet cache file. N.T. 2/24/05 at 248–249. Temporary internet files are stored in the cache, "a storage mechanism designed to speed up the loading of internet displays." 19 Berkeley Tech L.J. 1227, 1229 (Fall 2004).

4. We note that determining whether an individual sought and controlled pornographic images of children recognizes and promotes the purposes behind such statutes; namely, the destruction of the market for the exploitative use of children, *Osborne v. Ohio,* 495 U.S. 103, 109, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990), and, in turn, the protection of the physical and psychological well-being of children. *New York v. Ferber,* 458 U.S. 747, 756, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).

which we find is further evidence of control.

¶ 12 The totality of the circumstances was sufficient for the jury to find that Appellant's conduct of accessing and viewing child pornography over the internet constituted "control" of such pornography under § 6312.[5] Because the evidence was sufficient to find Appellant guilty of possession of child pornography, the evidence also supported a finding that he was guilty of criminal use of a communication facility.[6]

¶ 13 Based on the foregoing, we affirm the judgment of sentence.

¶ 14 Affirmed.

¶ 15 KLEIN, J., files a dissenting opinion in which BENDER, J. joins.

DISSENTING OPINION BY KLEIN, J.:

¶ 1 The facts in this case are undisputed. Anthony Diodoro used his home computer to intentionally visit websites to find child pornography and, in fact, viewed 30 screens depicting pornographic images of children. But Diodoro only *viewed* the images. He did not print them, intentionally save them, or do anything other than just look at them on his computer screen. Although the pornographic images were automatically saved to an internet cache file on the computer's hard drive, there was no evidence that Diodoro *knew* that the images were saved, and the Commonwealth does not contend that Diodoro did anything but view the images on the screen.

¶ 2 The provision of the Crimes Code under which Diodoro was convicted reads as follows:

> Any person who **knowingly possesses or controls** any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such acts commits an offense.

18 Pa.C.S.A. § 6312(d) (emphasis added).

¶ 3 In my view, we are not just considering the following question: If a person merely views an image on a computer screen without doing anything else, does he or she "knowingly possess or control" those images? Rather, I believe the real question before us is: Is there an ambiguity in the legislative definition of "possesses or controls," such that interpreting it in the light most favorable to the accused, the mere viewing of child pornography on a computer screen is not a crime?

¶ 4 The standard for interpreting a criminal statute is set forth in 1 Pa.C.S.A. § 1928(b), which states, "All provisions of a statute of the classes hereafter enumerated shall be strictly construed"; the first enumerated class is "penal provisions." At oral argument in this case, the Commonwealth agreed that penal statutes are to be strictly construed. This principle has been repeatedly cited by our appellate courts, and this Court recently stated: "According to the rules of statutory construction, where an ambiguity exists in the language of a penal statute, it should be interpreted in a light most favorable to the criminally accused." *Commonwealth v. Ryan*, 909 A.2d 839, 842 (Pa.Super.2006); *see Com-*

---

**5.** Having determined that Appellant controlled the pornographic images in question, we need not reach the issue of whether his actions of accessing and viewing the images constituted possession thereof.

**6.** As indicated above, it was stipulated that Appellant viewed the unlawful images on his computer.

*monwealth v. Dickson*, 591 Pa. 364, 918 A.2d 95, 100 (2007); *Commonwealth v. McClintic*, 589 Pa. 465, 909 A.2d 1241, 1246 (2006).

¶ 5 Were the legislature to amend the statute to prohibit individuals from "knowingly possessing, controlling, or viewing" child pornography, there would be no issue. But that is not what the legislature has done, at least not yet. As judges, we are only to interpret the law based on principles of statutory construction. It is not our job to rewrite the law when the legislature has not done so clearly. If the legislature fails to keep up with modern technology, it is not our responsibility to correct its oversight.

¶ 6 The discussions both in the briefs and at oral argument were quite heated on the question of whether mere viewing is the same as possessing and controlling. Precisely because reasonable minds can differ, section 6312(d) is, by definition, ambiguous. Because the statute is ambiguous, it must be construed strictly in favor of the defendant. This means that Diodoro was not on fair notice that he was committing a crime by merely viewing the images without doing something more.

¶ 7 The majority focuses its analysis on the term "controls" in section 6312(d). Certainly, reasonable arguments can be made that Diodoro did knowingly "control" the images. Diodoro intentionally sought them out and caused them to appear on his computer screen. As the majority points out, if he had wanted to, Diodoro could have saved, forwarded, or printed them. The legislature's purpose was to curtail abuse of children by not only criminalizing taking photographs that depict child pornography or offering them for sale to others, but also to cut off the market for child pornographers by criminalizing the purchasers.

¶ 8 However, reasonable arguments can also be made that Diodoro did not knowingly "control" the images. While Diodoro might have had the *ability* to "control" the images by downloading them, saving them, or printing them, he did not *exercise* his potential control over them. This is a fine, though critical, distinction.

¶ 9 For this reason, I take issue with the majority's discussion of the definition of "control." According to the majority, "Control means, *inter alia, '[t]o* exercise restraining or directing influence over.... The ability to exercise a restraining or directing influence over something.'" (Majority Op. at 174 (quoting Black's Law Dictionary 329 (6th ed.1990).)) The majority, however, quotes the dictionary definition out of context and omits a key portion of the definition, which is almost directly on point with the situation in this case.

¶ 10 Specifically, the *verb* "control" is defined as:

> To exercise restraining or directing influence over. To regulate; restrain; dominate; curb; to hold from action; overpower; counteract; govern.

Black's Law Dictionary 329 (6th ed.1990). The *noun* "control," on the other hand, is defined as:

> Power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee. The ability to exercise a restraining or directing influence over something.

*Id.* (citation omitted). Thus, the verb "control" means to exercise influence over, whereas the noun "control" means the ability to exercise influence over. The statutory provision at issue in this case clearly uses the word "control" as a verb, so the former definition applies.

¶ 11 More importantly, the second paragraph of the noun definition, which the

majority omits, offers the following example to illustrate the distinction:

> As used in [a] statute making it unlawful for any person to possess or "control" any narcotic drug, [the word "control"] is given its ordinary meaning, namely, **to exercise restraining or directing influence over,** and also has been defined to relate to authority over what is not in one's physical possession.

*Id.* (emphasis added) (citation omitted). In essence, the majority relies on the wrong definition and then ignores the usage that contradicts the meaning it wants.

¶ 12 Here, applying the proper, common sense definition of the verb "control," as used in section 6312(d), there was no evidence that Diodoro *exercised* any directing influence he might have had over the images on his computer screen, *e.g.,* by downloading, saving, or printing them.

¶ 13 If a person intentionally enters the Philadelphia Art Museum to view Cezanne's bathers, one would not say that that person "possesses or controls" the painting. Why should it be different if a person visits the museum's website, *www. philamuseum.org,* and clicks on the part of the site that shows images of the same Cezanne bathers?

¶ 14 The issue here is not which argument is better. The issue is whether there *is* a reasonable argument on both sides. If so, then there is an ambiguity, and it is improper to base a criminal conviction on an ambiguous statute.

¶ 15 While the issue in this case is one of first impression in Pennsylvania, it has been addressed by a number of state and federal appellate courts. Not surprisingly, these courts are split on the question of whether mere viewing constitutes knowing possession of child pornography, depending on the facts of the particular case as well as the applicable statutory language.

The varied treatment of this issue amongst jurisdictions with similar, though not identical, statutory language supports the conclusion that the language in our statute is not sufficiently clear.

¶ 16 The federal statute outlawing such conduct does not merely use the words "possess or control," but also makes it a crime to "knowingly receive" child pornography, including that sent by computer. *See* 18 U.S.C.A. §§ 2252(a)(2) & (a)(4)(B). Yet even under federal jurisprudence, the mere *viewing* of images on the internet does not constitute the crime of possession of child pornography absent knowledge that the images are being saved.

¶ 17 In *United States v. Romm,* 455 F.3d 990 (9th Cir.2006), *cert. denied,* ── U.S. ──, 127 S.Ct. 1024, 166 L.Ed.2d 772 (2007), the Ninth Circuit upheld the defendant's conviction where he *knew* the images were automatically saved to a cache drive, and enlarged some of the images from the otherwise hidden cache drive and consciously erased them. Because the defendant knew the images were saved, the court noted that he had the ability to copy, print or email the images to others. *Id.* at 1000–01. The *Romm* court stated, "Therefore, to possess the images in the cache, the defendant must, at a minimum, know that the unlawful images are stored on a disk or other tangible material in his possession." *Id.* at 1000. That is the key difference in the instant case. Here, there is no evidence that Diodoro had any idea that the images were automatically saved in a hidden cache file.

¶ 18 The Eighth Circuit also held that merely viewing an image without knowing it is being saved does not constitute "possession" or even "receipt." In *United States v. Stulock,* 308 F.3d 922 (8th Cir. 2002), while affirming convictions for child pornography knowingly saved to a hard drive, the Eighth Circuit cited with ap-

proval the trial court's acquittal on the charge of possession of images found in the defendant's cache file, stating, "The possession charge specified only the images found in the browser cache.... [O]ne cannot be guilty of possession for simply having viewed an image on a web site, thereby causing the image to be automatically stored in the browser's cache, without having purposely saved or downloaded the image." *Id.* at 925.

¶ 19 In *United States v. Tucker*, 305 F.3d 1193 (10th Cir.2002), the Tenth Circuit upheld a conviction for possession where the defendant intentionally sought out and viewed child pornography, knowing that the images would be saved on his hard drive. The defendant testified that: (1) he knew his web browser was automatically caching the images he viewed; (2) he did not want the images on his hard drive; and (3) he intentionally deleted them from his cache file after each computer session. Therefore, his possession was knowing and voluntary. *Id.* at 1205. The court specifically declined to reach the question of "whether an individual could be found guilty of knowingly possessing child pornography if he viewed such images over the Internet but was ignorant of the fact that his Web browser cached such images." *Id.* at 1205 n. 16.

¶ 20 A recent Georgia appellate court decision dealing with the instant situation, where the defendant only viewed pictures on his computer screen, reversed the defendant's conviction. *See Barton v. State*, 286 Ga.App. 49, 648 S.E.2d 660 (2007). In *Barton*, the Georgia Court of Appeals reversed the conviction because there was no evidence that the defendant took any affirmative action to save the pornographic images on his computer, even though they were found in his computer's cache files. The court held that the mere existence of pornographic images in a computer's cache

files is insufficient to constitute knowing possession, absent proof that the defendant either took affirmative action to save or download the images or knew that the computer automatically saved the files. *Id.* at 51–53, 648 S.E.2d at 663.

¶ 21 To the contrary, a recent Alabama appellate court decision upheld a defendant's conviction under virtually the same facts. *See Ward v. State*, — So.2d —, 2007 WL 1228169 (Ala.Crim.App.2007). In *Ward*, the Alabama Court of Criminal Appeals upheld a conviction for possession of child pornography where the pornographic images were found only in the cache files on the defendant's computer. The court held that the defendant had exercised control over the images by "reaching out" to view them on the internet, thereby giving him the ability to print, e-mail, copy, or download them, even though there was no evidence that he had ever done so. *Id.* at —, 2007 WL 1228169 at *8.

¶ 22 Several other state appellate courts have upheld convictions for possession of child pornography only where there was evidence that the defendant had intentionally saved or downloaded the images. *See, e.g., Krause v. State*, — S.W.3d —, 2007 WL 2004940 (Tex.App.2007) (upholding conviction where evidence showed that images of child pornography had been deliberately saved to external devices such as compact disks and hard drive); *State v. Mobley*, 129 Wash.App. 378, 118 P.3d 413 (2005) (upholding conviction where there was sufficient evidence that defendant sought out and controlled pornographic images by downloading and/or saving them on his computer), *app. denied*, 157 Wash.2d 1002, 136 P.3d 758 (2006); *Kromer v. Commonwealth*, 45 Va.App. 812, 613 S.E.2d 871 (2005) (upholding conviction where evidence showed that defendant downloaded and saved images onto computer and desktop shortcut indicated that

he manipulated them to be easily accessible and continuously available); *State v. Lindgren*, 275 Wis.2d 851, 687 N.W.2d 60 (App.2004) (upholding conviction where defendant repeatedly visited child pornography websites, clicked on thumbnail images to create larger pictures for viewing, and saved at least one image to his personal folder).

¶ 23 If appellate courts from other jurisdictions struggle with the issue, how can this Court reasonably say that the language in our statute is clear enough to provide a layperson with fair warning that the mere viewing of child pornography on a computer screen is a crime?

¶ 24 Again, the legislature could have drafted section 6312(d) to criminalize the mere viewing of child pornography. In our sister state of New Jersey, for example, the statute does not merely prohibit the possession of child pornography. It also makes it a crime for any person to "knowingly view[ ]" child pornography. *See* N.J.S.A. § 2C:24–4(b)(5)(b); *see also State v. Tanner*, 2007 WL 2239184 (N.J.Super.App.Div. filed Aug. 6, 2007) (upholding conviction under statute proscribing either viewing or possession of child pornography, where there was "overwhelming" evidence that defendant had viewed pornography via his computer).

¶ 25 While it well may be desirable for the Pennsylvania legislature to amend the statute to specifically proscribe the "viewing" of child pornography, as the New Jersey legislature did, it has not done so. Because the existing statute is ambiguous, I believe that we are required to adhere to the long-standing principle of strictly construing a penal statute in the defendant's favor, rather than making new law by redrafting the statute ourselves.

¶ 26 Accordingly, I would conclude that the evidence was insufficient to sustain Diodoro's convictions and must respectfully dissent.