173 P.3d 1046

**STATE of Arizona, Appellee,**

v.

**Michael JENSEN, Appellant.**

**No. 1 CA–CR 06–0376.**

Court of Appeals of Arizona,
Division 1, Department C.

Jan. 15, 2008.

---

Terry Goddard, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section, and Karla Hotis Delord, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Brent E. Graham, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

KESSLER, Judge.

¶ 1 Michael Jensen ("Jensen") was found guilty by a jury on one count of sexual conduct with a minor, a class 2 felony and dangerous crime against children; one count of public sexual indecency to a minor, a class 5 felony; two counts of child molestation, both class 2 felonies and dangerous crimes against children; and three counts of sexual exploitation of a minor, each a class 2 felony and dangerous crime against children. The sole issue raised by Jensen on appeal is whether the evidence was sufficient to support the three convictions for sexual exploitation of a minor based on receiving or possessing internet images of child pornography. We hold that evidence that a defendant knew or was aware that he received images containing child pornography from the internet other than by inadvertence is sufficient to

sustain a conviction for knowing receipt of such images. Based on this record, regardless of whether Jensen knew his computer "saved" those images, the evidence is sufficient to prove knowing receipt of child pornography. Accordingly, we affirm his convictions and sentences.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Counts five, six and seven of the indictment charge Jensen with sexual exploitation of a minor in violation of Arizona Revised Statutes ("A.R.S.") section 13–3553(A) (Supp. 2007) by receiving or possessing images of child pornography on a computer. Those charges and his convictions on those counts are based on three electronic images of child pornography found on a computer located at his mother's home. The police seized the computer pursuant to a search warrant as part of the investigation into allegations of sexual conduct with a minor, public sexual indecency, and child molestation made against Jensen by his daughter and his nephew. The three images were discovered by police during a forensic examination of the computer's hard drive. One image was an .art file recovered from an unallocated cluster on the hard drive.[1] The other two images were .jpg files[2] found on the hard drive in the "temporary internet files" folder.[3] According to Detective Core, these three files were automatically saved to the hard drive during use of the computer in accessing websites on the internet.

---

1. Detective Larry Core testified that ".art" files are created in America Online (AOL) and when a person uses and downloads from AOL, the corresponding extension created is .art. "ART is a proprietary graphics format ... technology [that] utilizes multiple compression algorithms within a single format. The compressor employs a fuzzy logic engine to analyze the image—looking at factors such as color depth, size, and whether the image is a photo or synthetic graphic—before selecting the appropriate compression algorithms to use on the image." http:/www.art=webreference.com/dev/graphics/compress.html (last visited Jan. 9, 2008).

2. "Computer file names have an extension that normally identifies the file type. For example, a text file will usually have a '.txt' extension and a picture file will usually have a '.jpg' extension." T.E. Howard, *Don't Cache Out Your Case: Prose-*

*cuting Child Pornography Possession Laws Based on Images Located in Temporary Internet Files,* 19 Berkeley Tech. L.J. 1227, 1234 (Fall 2004) (*"Howard"*).

3. "A cache (pronounced 'cash') is a storage mechanism designed to speed up the loading of Internet displays. When a computer user views a webpage, the web browser stores a copy of the page on the computer's hard drive in a folder or directory. That folder is known as the cache, and the individual files within the cache are known as temporary Internet files. When the user later returns to a previously visited webpage, the browser retrieves the cached file to display the webpage instead of retrieving the file from the Internet. By retrieving the page from the cache, instead of the Internet, the browser can display the page more quickly." *Howard* 19 Berkeley Tech. L.J. at 1229–30.

¶ 3 After the State's case, Jensen moved for an acquittal on all counts pursuant to Rule 20, Arizona Rules of Criminal Procedure. The court denied the motion with respect to counts one through seven, but granted the motion with respect to counts eight through ten for reasons unrelated to the issues on appeal. The jury found Jensen guilty of counts one through seven and Jensen timely appealed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12–120.21(A)(1) (2003), 13–4031 (2001), and –4033(A)(1) (2001).

## DISCUSSION

¶ 4 Jensen does not contest the nature of the three images found on the computer or his knowledge of the nature of the images. Instead, his arguments are directed at the sufficiency of the evidence to support a finding that he committed the act of knowingly possessing or receiving the three images. More specifically, he contends the evidence is insufficient to show: (1) he knowingly possessed the images because there was no evidence to show he downloaded the images on the computer, but rather that the computer automatically downloaded those images; (2) he was the one to use the computer to view child pornography; and (3) as to Count five, the date the image was stored on the computer as alleged in the indictment.

### Standard of Review

¶ 5 In considering a claim of insufficient evidence, we construe the evidence in the light most favorable to sustaining the verdicts, and resolve all reasonable inferences against the defendant. *State v. Greene*, 192 Ariz. 431, 436, ¶ 12, 967 P.2d 106, 111 (1998). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987). We will not reverse a judgment based on the credibility of a witness, but rather leave that issue to the factfinder. *State v. Alawy*, 198 Ariz. 363, 365 n. 2, ¶ 7, 9 P.3d 1102, 1104 n. 2 (App.2000).

### *Arizona Revised Statutes § 13–3553(A)(2)*

¶ 6 Sexual exploitation of a minor is defined in A.R.S. § 13–3553(A)(2) (Supp. 2007). This statute provides, in pertinent part:

> A person commits sexual exploitation of a minor by knowingly:

> Distributing, transporting, exhibiting, *receiving*, selling, purchasing, electronically transmitting, *possessing* or exchanging any visual depiction [4] in which a minor is engaged in exploitive exhibition or other sexual conduct.

(emphasis supplied).[5] We interpret "receiving" and "possessing" as separate acts, either of which violates A.R.S. § 13–3553(A)(2). *See Champlin v. Sargeant*, 192 Ariz. 371, 374, ¶ 16, 965 P.2d 763, 766 (1998) (statutes shall be construed to give meaning to each word so that no part will be superfluous, void, contradictory, or insignificant). Thus, under similar federal statutes prohibiting receipt or possession of child pornography,[6] the courts have explained that to be guilty of receiving child pornography, a defendant must knowingly receive material he knows is child pornography, whereas a person will not have violated the statute if without knowledge the person is sent a mix of adult and child pornography. However, that same person could be in possession of the unlawful image if it is

---

4.  " 'Visual depiction' includes each visual image that is contained in an undeveloped film, videotape or photograph or *data stored in any form and that is capable of conversion into a visual image.*" A.R.S. § 13–3551(11) (Supp.2007) (emphasis supplied).

5.  Prior to a 1999 amendment, A.R.S. § 13–3553(A)(2) prohibited possession of "any visual or print medium in which minors are engaged in exploitive exhibition or other sexual conduct." Thus, the offense was construed as proscribing the possession of the media or physical object containing or depicting the image. *State v. Valdez*, 182 Ariz. 165, 170, 894 P.2d 708, 713 (App. 1994). Since its amendment, however, the offense is defined in terms of the visual image itself rather than any specific media or physical object containing the image.

6.  18 U.S.C. § 2252A(a)(2) prohibits "knowingly receiv[ing] or distribut[ing] ... (A) any child pornography". 18 U.S.C. § 2252A(a)(5)(B) prohibits "knowingly possess[ing] any ... computer disk, or any other material that contains an image of child pornography".

retained. *United States v. Watzman,* 486 F.3d 1004, 1009 (7th Cir.2007); *United States v. Myers,* 355 F.3d 1040, 1042 (7th Cir.2004); *United States v. Skotzke,* 2007 WL 1584219 *4 (E.D.Mich.2007); *United States v. Kamen,* 491 F.Supp.2d 142, 153 (D.Mass.2007). *See also United States v. Lacy,* 119 F.3d 742, 747 (9th Cir.1997) (citing *United States v. X-Citement Video, Inc.,* 513 U.S. 64, 72, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) for proposition that the knowledge requirement also applies to the fact that the images were child pornography).

■ ¶ 7 As it relates to this appeal, Arizona law defines most of the terms contained in section 13–3553(A)(2). Thus, " '[k]nowingly' means ... that a person is aware or believes that his or her conduct is of that nature" described by the statute as defining the offense. A.R.S. § 13–105(9)(b) (Supp. 2007). Knowledge may inferred by circumstantial evidence. *See, e.g., State v. Hull,* 15 Ariz.App. 134, 135, 486 P.2d 814, 815 (1971) (both knowledge and possession may be shown by circumstantial evidence). " 'Possess' means knowingly to have physical possession or otherwise exercise dominion or control over property." A.R.S. § 13–105(30) (Supp.2007). " 'Possession' means a voluntary act if the defendant knowingly exercised dominion or control over property." A.R.S. § 13–105(31) (Supp.2007) (emphasis supplied). " 'Voluntary act' means a bodily movement performed consciously and as a result of effort and determination." A.R.S. § 13–105(37) (Supp.2007). While Arizona Revised Statutes do not define "receipt" or "receiving," we construe words and phrases "according to the common and approved use of the language" unless "[t]echnical words ... have acquired a peculiar and appropriate meaning in the law". A.R.S. § 1–213 (2002). We will often turn to dictionary definitions for such common usage. *State v. Sharma,* 216 Ariz. 292, 296, ¶ 15, 165 P.3d 693, 697 (App.2007). To "receive" is commonly defined as "to take delivery of (a thing) from another" and "to accept (something offered or presented)" and "to take in." II Compact Edition of the Oxford English Dictionary 232 (1971). *See also Webster's II New Riverside University Dictionary* 981 (1994) ("[t]o acquire or take (something given, offered, or transmitted)" and to "convert incoming elec-

tro-magnetic waves into visible or audible signals").

### Knowing Possession and Knowing Receipt of Child Pornography

■ ¶ 8 Jensen contends the evidence was insufficient to prove that he knowingly possessed or received the images of child pornography because the evidence is undisputed that they were saved on the computer without any action on the part of the computer operator. The State contends that at a minimum the evidence shows that Jensen knowingly received the images regardless of whether he knew they were downloaded on the computer because he actively searched for websites containing child pornography. It also contends that he knowingly possessed the images because he had the ability to control them either when he received them or because they were downloaded on his computer.

¶ 9 We recognize that there is a division in authority on whether a defendant knowingly possesses child pornography on a computer when the computer automatically downloads those images without the defendant's knowledge. Howard, 19 Berkeley Tech. L.J. at 1239–53. Thus, in *United States v. Kuchinski,* 469 F.3d 853, 861–63 (9th Cir.2006), the court held that the trial court erred in increasing a sentence based on other images found on the defendant's computer when the record showed he had no knowledge the images were on the computer:

> Where a defendant lacks knowledge about the cache files, and concomitantly lacks access to [get] control over those files, it is not proper to charge him with possession and control of the child pornography images located in those files, without some other indication of dominion and control over the images. To do so turns abysmal ignorance into knowledge and a less than valetudinarian grasp into dominion and control.

*Id. See also United States v. Stulock,* 308 F.3d 922, 925 (8th Cir.2002) (noting that district court acquitted defendant of possession of images for viewing images resulting in them being automatically downloaded onto browser's cache); *Lacy,* 119 F.3d at 747–49

(trial court erred in not instructing that the defendant must know that the hard drive and disks contained child pornography to be guilty of possession, but affirming conviction because defendant did not object to instructions); *Barton v. State*, 286 Ga.App. 49, 648 S.E.2d 660, 663 (2007) (reversing conviction when there was no evidence defendant took any affirmative action to save the images on his computer cache file or could have known, filed or accessed those files; to be guilty of knowing possession, defendant would have to either take affirmative action to save or download the images or know that the computer was saving the files).

¶ 10 In contrast, in *Com. v. Diodoro*, 932 A.2d 172, 174–75 n. 5, ¶¶ 11–12 (Pa.Super.2007), the court held that intentionally viewing child pornographic images without intentionally downloading or saving the image, or without knowledge that the images would be automatically saved to the computer, constituted *control* over the images, which was prohibited by statute, without addressing whether such conduct amounted to possession of the images.[7] *See also Ward v. State*, —— So.2d ——, 2007 WL 1228169 (Ala. Crim.App.2007) (affirming conviction for possession of child pornography found on computer cache file because defendant had exercised control over the images by reaching out to view them on the internet and thus giving him the ability to print or download them so that he had constructive possession). *See also United States v. Romm*, 455 F.3d 990, 998 (9th Cir.2006) (defendant knowingly received and possessed images while they were displayed on his computer screen because at that point he had control over them).[8]

¶ 11 The arguments posited by each side on this issue have merit. The view that knowing possession requires an affirmative act on the part of the defendant to save the image or at least knowing that the computer is saving it seems consistent with the Arizona definition of knowingly possessing an item requiring a voluntary act on the part of the defendant giving him dominion and control over the items. A.R.S. §§ 13–105(31) and (37). In contrast, it could be contended that once a defendant knowingly receives such an image, the defendant has the ability to control it by downloading it, printing it or otherwise saving it. *Diodoro*, 932 A.2d at 174–75 n. 5, ¶¶ 11–12; *Romm*, 455 F.3d at 998.

¶ 12 We need not decide whether Jensen knowingly possessed the images by his computer automatically downloading them without his knowledge for two reasons. First, the jury could simply have not believed him when he testified that he did not voluntarily save the images and did not know the computer was automatically downloading the images onto the hard drive. It is up to the factfinder to determine credibility issues. *Alawy*, 198 Ariz. at 365 n. 2, ¶ 7, 9 P.3d at 1104, n. 2.

¶ 13 Second, and equally important, whether the computer automatically downloaded the images without Jensen's knowledge is irrelevant to whether Jensen knowingly "received" the images. A.R.S. § 13–3553(A)(2) criminalizes not only knowing possession, but also knowing receipt of images of child pornography. " 'Knowingly' means . . . that a person is aware or believes that his or her conduct is of that nature" described by the statute as defining the offense. A.R.S. § 13–105(9)(b). "Receipt" or "receiving" means "to take delivery of (a thing) from another" or "[t]o acquire or take (something given, offered, or transmitted)" or to "convert in-

---

**7.** In his brief, Jensen cited to an earlier, unreported decision in *Diodoro*. The Pennsylvania court later withdrew that decision and issued its en banc decision cited above. *Diodoro*, 932 A.2d at 173, ¶ 3.

**8.** We do not find, however, that *Romm* and *United States v. Tucker*, 305 F.3d 1193 (10th Cir. 2002), necessarily support the State's position that the automatic downloading of the images was sufficient to convict Jensen of knowing possession of the images. We find those cases distinguishable on this issue because in those cases there was evidence that the defendants knew the computer was downloading the images. *Romm*, 455 F.3d at 995–96, 1000–01 (evidence was sufficient to show knowing possession of images because defendant knew about files and had taken steps to access and delete them; "to possess the images in the cache, the defendant must, at a minimum, know that the unlawful images are stored on a disk or other tangible material in his possession."); *Tucker*, 305 F.3d at 1204 (defendant knew images would be sent to his browser cache file and thus saved on his hard drive). *See Kuchinski*, 469 F.3d at 862–63 (distinguishing *Romm* and *Tucker* on that basis).

coming electro-magnetic waves into visible or audible signals". *See supra,* ¶ 7.

¶ 14 There is no question Jensen knowingly received such images because he actively searched for those types of images on the computer over an extended period of time, resulting in nearly 25,000 hits for websites containing certain key phrases and combinations of words often associated with child pornography and exploitation of minors.

¶ 15 Jensen's knowledge of receipt of illegal pornography is implicit in his intentional searches for child pornography. Contrary to Jensen's contention, the act of intentionally searching for and accessing a website for child pornography is not the equivalent of merely looking at a picture in a museum. Detective Core explained that in accessing a website, the computer loads a copy of the digital information available at the website into the computer's random access memory or RAM. *See also Howard,* 19 Berkeley Tech. L.J. at 1229–30 (explaining that web browser stores copy of page on computer hard drive in a folder or directory known as a cache and that individual files within cache are known as temporary internet files). In other words, the operator actually obtains a copy of whatever is viewed on the monitor, in this case the three images of child pornography, by the act of accessing the website. The fact that the images were contemporaneously saved automatically on the hard drive without further action by the operator is irrelevant because it does not diminish the nature and fact of the receipt of the images.

¶ 16 Our conclusion that Jensen's knowing receipt of the images as shown by his search for such material is supported by various cases finding that internet searches for this kind of material is evidence that the computer operator knew what he was going to and did receive. *E.g., United States v. Gourde,* 440 F.3d 1065, 1070–71 (9th Cir.2006) (probable cause shown for search warrant of computer on basis of receiving and possessing child pornography by defendant taking active steps to search for such material on internet); *Romm,* 455 F.3d at 998 (person knowingly receives and possesses images when he seeks them out over the internet and exercises dominion over them); *United States v. Brown,* 862 F.2d 1033, 1038 (3d Cir.1988) (knowing receipt shown by strong interest in receiving child pornography evidenced by solicitation for such material). *See also United States v. Murray,* 52 M.J. 423, 425 (C.A.A.F. 2000) (court rejected argument of inadvertent receipt of images when defendant had knowingly downloaded images into one file); *Ward,* 2007 WL 1228169, *6 (searches for child pornography on internet showed defendant was reaching out for such images).

¶ 17 This does not mean, however, that *inadvertent* receipt of images of child pornography violates § 13–3553(A)(2). Construing the similar federal statutes, *supra* n. 2, courts have clarified and cautioned that inadvertent receipt of such images might or would not be violative of the statutes. *Watzman,* 486 F.3d at 1009 (person who receives child pornography by accident is not guilty of knowingly receiving it, though he would be guilty of possession if he retained it); *Skotzke,* 2007 WL 1584219, *4 (same); *Romm,* 455 F.3d at 1000 (noting in dicta that images could be saved to the cache when the defendant accidentally views the images as through a "pop-up," but stating that was not the case with Romm); *Gourde,* 440 F.3d at 1070–71 (for purposes of probable cause for warrant, distinguishing person who actively seeks out unlawful images and one who comes across them by accident). *See also Ward,* 2007 WL 1228169, *6 (distinguishing between reaching out for images and accidentally seeing them via email spam or links). These latter cases are different from those cases where a person actively seeks out such material because the accidental recipient who unexpectedly or unknowingly receives an image that he has not sought out has not formed the requisite knowledge, and is lacking the necessary mens rea. *Lacy,* 119 F.3d at 747 (defendant must know of nature of images to meet "knowing" element of statute).

¶ 18 In sum, we hold that the presence of two images in the temporary internet folder and the image in the unallocated cluster, coupled with the numerous syntax searches for words and phrases associated with child pornography, is evidence of voluntary action undertaken by the computer operator in an effort to receive child pornographic images from the internet. This meets the requirement of knowing receipt of

the images regardless if he intended to save them or knew his computer was saving them. The evidence was more than sufficient to permit the jury to find that the computer operator knowingly received the three saved images on the hard drive by intentionally accessing websites knowing or intending they would contain child pornography, to have them visually appear on the screen of the computer monitor.

### There Was Sufficient Evidence that Jensen was the Computer Operator

■ ¶ 19 Jensen also argues that the evidence failed to show that he was the operator of the computer who received the images saved on the hard drive. Although there were others present in his mother's home, the evidence was sufficient to permit the jury to conclude that Jensen was responsible for the images on the hard drive. At trial, Jensen admitted he purchased the computer in September 2001, registered it in his own name, and used it to access the internet. In addition, there was testimony presented that other than his mother, no one else ever used the computer to access the internet. Jensen's mother further testified she had used the computer only a couple of times and never viewed any pornography while on the internet. The jury could reasonably find from this testimony that Jensen was the user who received the three images of child pornography found on the hard drive.

### The Evidence Conforms to the Indictment

■ ¶ 20 Finally, Jensen contends the evidence was insufficient to establish that he possessed or received the files during the time period alleged in the indictment. The three counts of sexual exploitation of a minor for which Jensen was convicted alleged that the offenses occurred "on or between the 29th day of January, 2002, and the 29th day of January, 2003." Detective Core could not give a specific date for the creation of the three image files, but his testimony did establish that the two image files found in the temporary internet files folder were created between April 23, 2002, and January 27, 2003. Thus, there is no merit to Jensen's claim that the evidence fails to establish that the two offenses related to these two images did not occur within the time frame alleged in the indictment.

¶ 21 The timing of the offense based on the possession or receiving of the .art file discovered in an unallocated cluster on the computer is not as clear-cut. Because it was located in an unallocated cluster, this .art file had no date or time stamps associated with it. Detective Core testified, however, that an .art file is created when a computer user is accessing America Online (AOL) on the internet. Given that the temporary internet files folder showed that the computer was used to access the internet between April 23, 2002, and January 27, 2003, one reasonable inference that could be drawn from the evidence is that the image found in the .art file was received as a result of Jensen accessing AOL sometime between those two dates. Consequently, the evidence was sufficient to permit the jury to find that Jensen committed the charged offense by receiving this image within the time period alleged in the indictment. *See State v. Toney*, 113 Ariz. 404, 408, 555 P.2d 650, 654 (1976) (noting evidence is not insubstantial simply because reasonable persons may draw different conclusions from the evidence).

### CONCLUSION

¶ 22 For the foregoing reasons, Jensen's convictions and sentences are affirmed.

CONCURRING: MICHAEL J. BROWN, Presiding Judge, and LAWRENCE F. WINTHROP, Judge.