IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2009-0090 |
| Appellee, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| PAUL DAVID WINDSOR, JR., | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20073224

Honorable Hector E. Campoy, Judge

AFFIRMED

Terry Goddard, Arizona Attorney General
 By Kent E. Cattani and Diane Leigh Hunt                    Tucson
                                                  Attorneys for Appellee


Robert J. Hirsh, Pima County Public Defender
 By David J. Euchner                                        Tucson
                                                  Attorneys for Appellant


E S P I N O S A, Presiding Judge.

¶1 This case raises the novel issue whether downloading images from a remote source through the Internet constitutes "duplicating," as opposed to "receiving," these images for purposes of Arizona's sexual exploitation of children statutes. After a jury trial, Paul Windsor was convicted of five counts of sexual exploitation of a minor in violation of A.R.S. § 13-3553(A)(1). He was sentenced to mitigated, consecutive sentences totaling fifty years' imprisonment. On appeal, Windsor contends the evidence was insufficient to support his convictions. For the following reasons, we disagree and affirm the convictions and sentences.

**Factual and Procedural History**

¶2 We view the facts in the light most favorable to sustaining the jury's verdicts. *State v. Huffman*, 222 Ariz. 416, ¶ 2, 215 P.3d 390, 392 (App. 2009). One morning in January 2006, staff at a public computer facility located in a University of Arizona library received more than fifty, automatically generated, virus-alert messages from one of the facility's computers over the course of several minutes. After a staff member remotely rebooted that computer, another computer began sending similar virus-notification messages. The staff member remotely viewed its screen and saw "sexually suggestive" pictures of children. He then rebooted the computer, "hoping that the [user] would leave."

¶3 When the second computer continued to send the virus-alert messages, staff members once again remotely accessed its screen and observed that the user was opening the images in a graphics program. A staff member called university police officers, who

2

arrived and found Windsor sitting at the computer with pornographic photographs of children on the screen.[1]  Subsequent forensic analysis revealed Windsor had downloaded the images from a remote Internet site and saved them in a shared file on the computer's hard drive.  He was later indicted, arrested, and convicted as outlined above.

## Discussion

¶4        The sole issue on appeal is whether Windsor's conviction was supported by sufficient evidence.[2]  We will not reverse a conviction unless the state has failed to present substantial evidence of guilt.  Substantial evidence is "more than a mere scintilla" and is proof that reasonable persons could accept as convincing beyond a reasonable doubt.  *State v. Nunez*, 167 Ariz. 272, 278, 806 P.2d 861, 867 (1991).

¶5        The statute Windsor was convicted of violating, § 13-3553(A)(1), prohibits "[r]ecording, filming, photographing, developing or duplicating any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct."  Windsor does not dispute that the images he accessed were child pornography, but rather contends that his downloading these images did not amount to "[r]ecording, filming,

---

[1]There was trial testimony and an exhibit showing that the screen displayed numerous photographs in a "collage" format.

[2]Windsor does not dispute that he failed at trial to move for a judgment of acquittal on this basis pursuant to Rule 20, Ariz. R. Crim. P., and therefore is entitled to a review only for fundamental error.  *See State v. Stroud*, 209 Ariz. 410, n.2, 103 P.3d 912, 914 n.2 (2005).  However, a conviction not supported by substantial evidence constitutes fundamental error.  *Id*.; *see also State v. Fernandez*, 216 Ariz. 545, ¶ 32, 169 P.3d 641, 650 (App. 2007) (court will not ignore fundamental error if it finds it), *cert. denied*, ___ U.S. ___, 129 S. Ct. 460 (2008).

3

photographing, developing, or duplicating" them. In our recent opinion, *State v. Paredes-Solano*, 223 Ariz. 284, ¶¶ 9-12, 15, 222 P.3d 900, 904-06 (App. 2009), this court recognized that § 13-3553(A)(1), under which Windsor was charged, and § 13-3553(A)(2), which prohibits "[d]istributing, transporting, exhibiting, receiving, selling, purchasing, electronically transmitting, possessing, or exchanging," were intended to punish different kinds of harm. Relying on *Paredes-Solano*, Windsor argues the state was required to prove he committed the distinct crime outlined in the subsection under which he was charged.[3] We agree. *See Paredes-Solano*, 223 Ariz. 284, ¶¶ 16-22, 222 P.3d at 906-08 (reversing conviction where duplicitous indictment did not require unanimous verdict distinguishing between § 13-3553(A)(1) and (A)(2)).

¶6        Accordingly, the convictions cannot be sustained unless the state presented sufficient evidence Windsor engaged in one of the activities proscribed in § 13-3553(A)(1). Because it is undisputed Windsor did not record, film, photograph, or develop any image, the validity of his conviction turns on whether downloading pictures from a remote Internet site constitutes "duplicati[on]" for the purposes of this statute. When called upon to interpret a statute, we consider its plain language, giving meaning to each word and phrase "'so that no part is rendered void, superfluous, contradictory or insignificant.'" *State v. Larson*, 222 Ariz. 341, ¶ 14, 214 P.3d 429, 432 (App. 2009),

---

[3]Windsor appears to all but concede that, had the state charged him under § 13-3553(A)(2), sufficient evidence would exist to support his conviction.

*quoting Pinal Vista Props., L.L.C. v. Turnbull*, 208 Ariz. 188, ¶ 10, 91 P.3d 1031, 1033 (App. 2004).

**¶7** At trial, the state's computer expert testified that downloading involves using the Internet to copy a file from a remote computer, a description consistent with the way courts have construed the term. *See, e.g.*, *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919-23 (2005) (downloaded files copied from servers or directly from peer-to-peer network); *United States v. Sullivan*, 451 F.3d 884, 891 (D.C. Cir. 2006) ("every time one user downloads an image, he simultaneously produces a duplicate version of that image"); *Salter v. State*, 906 N.E.2d 212, 219 (Ind. Ct. App. 2009) (downloading picture means "saving a copy of the image"); *Moore v. State*, 879 A.2d 1111, 1117 (Md. 2005) (download "means to transfer or copy a file"); *People v. Hill*, 715 N.W.2d 301, 304 (Mich. Ct. App. 2006) (downloaded material copied from websites).

**¶8** As Windsor points out, the word "duplicate" is not defined in the criminal code. The general dictionary definition of that word, however, is "to make an exact copy of." *Webster's Ninth New Collegiate Dictionary* 389 (1991); *accord The American Heritage Dictionary* 430 (2d college ed. 1982) ("[t]o make an identical copy of"); *see State v. Bews*, 177 Ariz. 334, 336, 868 P.2d 347, 349 (App. 1993) ("widely respected dictionary" useful when statutory term not defined in statute and "no indication it [was] to be given an unusual meaning"). Based solely on the plain meanings of the terms "download" and "duplicate," it would appear that one who downloads an image from a

remote computer or computer server has duplicated it for the purposes of § 13-3553(A)(1).

¶9        Windsor disputes this construction of the statute. Citing *Paredes-Solano*, he argues that because "duplicating" is used in § 13-3553(A)(1), it must refer to the "creation or production of a new image," and the act of downloading is more analogous to the receipt or distribution of an existing image described in § 13-3553(A)(2) than to the creation of a new one.[4] But he does not explain how creating an electronic copy of an image is so significantly different from making any other type of duplicate that it should be treated differently under the law. Moreover, our generalized statement of the statute's purposes in *Paredes-Solano* does not alter the plain language of the statute and cannot serve to narrow its application. *See State v. Peek*, 219 Ariz. 182, ¶¶ 16-17, 195 P.3d 641, 643-44 (2008) (rejecting argument based on case law requiring interpretation contrary to statute's plain language).

¶10       Windsor also cites Oregon and Washington statutes similar to § 13-3553(A) and out-of-state cases in which courts upheld the convictions of defendants who had reproduced pornographic images. It appears his intent is to show that other states do not regard the act of downloading an image as "duplicati[on]" for the purposes of their

---

[4]In his opening brief, Windsor likens downloading images to purchasing a magazine containing pornography, arguing that a purchaser could only be guilty of violating § 13-3553(A)(1) by taking the additional step of scanning, photocopying, or faxing the image, "thus creating something entirely new." But downloading images is more analogous to purchasing materials at a store that requires a person to make his or her own photocopy of the materials to leave with them.

6

respective statutes. But none of the decisions he cites stand for this proposition or even include discussion of this issue. *State v. Dimock*, 27 P.3d 1048, 1048-49 (Or. Ct. App. 2001), involved a defendant who undisputedly used electronic mail (e-mail) to transmit pornographic images. *State v. Knutson*, 823 P.2d 513, 515 (Wash. Ct. App. 1991), did not involve computers at all, but rather photographs the defendant had enlarged and reproduced. And the defendants in *State v. Betnar*, 166 P.3d 554, 556 (Or. Ct. App. 2007), and *People v. Hill*, 715 N.W.2d 301, 304-05 (Mich. Ct. App. 2006), had duplicated images by placing them on compact discs. That other courts have sustained convictions for acts that would also violate our statute is not germane to Windsor's claim that downloading is not duplicating.

¶11          We also reject Windsor's contention that interpreting the word "duplicati[on]" in § 13-3553(A)(1) to include downloading would render superfluous the terms "receiving," "electronically transmitting," and "possessing," that appear in § 13-3553(A)(2). Although he does not specifically explain how these words would become meaningless if downloading constitutes duplication, we infer that Windsor's primary concern is the term "electronically transmitting." [5] But there are a number of ways that electronic transmission could entail acts other than downloading, such as using

---

[5]One obviously could receive or possess illicit materials without having downloaded them, such as a photograph or a video recording, and without having either accessed them on the Internet or duplicated them.

e-mail to send an image or broadcasting streaming video over the Internet.[6]  Additionally, we are unconcerned that a defendant who downloaded an image could be found both to possess and to have duplicated it—a possibility faced equally by anyone who knowingly copies proscribed images in any form.  *Cf. State v. Cheramie*, 218 Ariz. 447, ¶¶ 10-11, 189 P.3d 374, 376 (2008) (unlawful possession lesser-included offense of transporting drugs for sale because "we cannot conceive how a person can 'transport' drugs without having possess[ed them]").

¶12    We find additional support in *State v. Jensen*, 217 Ariz. 345, 173 P.3d 1046 (App. 2008), for our conclusion that intentionally downloading an image constitutes something distinct from receiving, possessing, or electronically transmitting it.  The issue in *Jensen* was whether sufficient evidence existed to prove the defendant knowingly had received or possessed child pornography in violation of § 13-3553(A)(2) when his computer's memory cache contained automatically saved images that had been accessed via the Internet.  *Id*. ¶¶ 2, 4, 6.  In holding the downloaded images could be evidence of receipt, this court discussed the concept of "receiving" information through the Internet, distinguishing that receipt from intentionally downloading a file.  *Id*. ¶ 18 (images automatically stored in computer cache constituted evidence operator voluntarily

---

[6]"Streaming" involves transmitting electronic data in a continuous fashion to disseminate visual or audio content, or both, among receiving devices.  *See Cable Plus Co., L.P. v. Ariz. Dep't of Rev.*, 197 Ariz. 507, ¶ 13, 4 P.3d 1050, 1052-53 (App. 2000) (describing transmission of information by streaming electronic signals); *see also UMG Recordings, Inc. v. Veoh Networks, Inc.*, 620 F. Supp. 2d 1081, 1085 (C.D. Cal. 2008) (distinguishing downloading from streaming).

received them by "intentionally accessing websites" "to have them visually appear on the screen").

¶13    Similarly, we determined that, by visiting websites containing child pornography, the defendant in *Jensen* had taken "'something given, offered, or transmitted'" or had "'convert[ed] incoming electro-magnetic waves into visible or audible signals,'" an act similar to, but separate from, intentionally downloading files onto his computer hard drive. *Id.* ¶ 13, *quoting Webster's II New Riverside University Dictionary* 981 (1994). Implicit in this discussion is the idea that "electronic transmission" is the broadcast of images over the Internet, which one receives by viewing, and that these acts of transmitting and receiving are separate from actively and intentionally making a copy by downloading and saving the images in a specific location on a computer.[7]

¶14    At Windsor's trial, an FBI computer forensics expert testified that downloading a file from the Internet involves copying the file to a user's computer hard drive. And Windsor did not contest that he was responsible for downloading the recovered image files.[8] Accordingly, because the state presented evidence that, by

---

[7]In *Jensen* we did not reach the issue of whether inadvertently cached images constituted knowing possession of child pornography. 217 Ariz. 345, ¶ 18, 173 P.3d at 1052-53. Similarly, here we need not address whether automatically cached copies of images could constitute a knowing duplication because the evidence clearly shows Windsor placed the images in a shared folder of the computer.

[8]At trial, Windsor denied knowing what the files contained but did not dispute that he had downloaded them.

9

downloading these images, Windsor intentionally had copied them onto the computer, his conviction for duplicating an exploitative visual representation of a child in violation of § 13-3553(A)(1) was supported by substantial evidence.

**Disposition**

¶15        Windsor's convictions and sentences are affirmed.


/s/ *Philip G. Espinosa*
_____
PHILIP G. ESPINOSA, Presiding Judge


CONCURRING:


/s/ *Joseph W. Howard*
_____
JOSEPH W. HOWARD, Chief Judge


/s/ *Peter J. Eckerstrom*
_____
PETER J. ECKERSTROM, Presiding Judge